[No. 6,457.—Department No. 2.]
## ELLIOTT *v.* WOHLFROM.

DIVORCE — FRAUDULENT JUDGMENT — APPEARANCE — ESTOPPEL — COMMON
PROPERTY.—In an action of ejectment, in which both parties deraigned
title under a deed executed May 15th, 1865, for valuable consideration, to
one Amanda C., the defendant by a deed direct from her, and the plaintiff
by a deed from J. C.—formerly her husband—the case turned upon the valid-
ity of a judgment of divorce rendered June 23rd, 1864, in a case brought by
J. C. against Amanda C., in the State of Indiana, in which the latter
appeared by attorney; but it appeared that the appearance of the attorney
was without her knowledge or· consent.  *Held*, that the judgment was
not void, but, at most, only voidable at her instance, and that it could not
be attacked by her husband or his grantee.

ID.—FRAUD.—Fraud renders any transaction void at the election of the party
defrauded; but the party by whom the fraud is perpetrated has not that
election.

APPEAL from a judgment for the plaintiff, and from an order
refusing a new trial, in the Sixth District Court, County of Yolo.
SEPULVEDA, J.

The facts are stated in the opinion.

*C. P. Sprague*, for Appellant.

The same force and effect is to be given to the decree ren-
dered in the Indiana court that would be given to it if it had
been rendered in this State.  (*Hampton* v. *McConnel*, 3 Wheat.
234; *Mills* v. *Duryee*, 7 Cranch, 481; *Finneran* v. *Leonard*,
7 Allen, 54; Bigelow on Estoppels, 195–200, 224, 258, and 262.)
The Indiana judgment, not being void upon its face, cannot be
collaterally attacked.  (*Hall* v. *Haeffly*, 6 Humph. 444; *Car-
pentier* v. *City of Oakland*, 30 Cal. 447; *Hahn* v. *Kelly*, 34 id.
402, 415.)

The appearance of the attorney in the Indiana divorce is con-
clusive even against the party not participating in the fraud,
and the question of his fraudulent appearance cannot be
inquired into in a collateral proceeding.  (*Miller* v. *Ewing*, 8
Smedes & M. 421; *Warren* v. *Lusk*, 16 Mo. 102; *Baker* v.
*Stonebraker*, 34 id. 172; *Landes* v. *Brant*, 10 How. 371; Big-
elow on Estoppels, 144–5, and cases there cited; *Gray* v.
*Dougherty*, 25 Cal. 266; *Garwood* v. *Garwood*, 29 id. 521;

*Finneran* v. *Leonard*, 7 Allen, 54; Freeman on Judgments, §§ 289, 334–5.

The Court granting the decree had jurisdiction of the subject-matter of the suit. (*Herron* v. *Herron*, 16 Ind. 129 ; *Ewing* v. *Ewing*, 24 id. 470.) Even though the judgment had been absolutely void, Chandler and his grantee are estopped from denying its validity. (2 Bishop on Marriage and Divorce, §§ 754 and 760–1; Freeman on Judgments, 118, 122, 249, 561 ; *Grignon* v. *Aster*, 2 How. 319; Bigelow on Estoppels, 35, 37, 38, 44, 45.)

*D. W. Welty*, for Respondent.

The facts show that the proceedings in the Indiana divorce case were a mockery of justice and a gross fraud. The record, when offered and any right claimed under it, may be impeached by oral, written, or other evidence. (*Borden* v. *Fitch*, 15 John. 121 ; *Starbuck* v. *Murray*, 5 Wend. 149.)

The right of courts to inquire into the jurisdiction of foreign courts over the parties, or either of them, is established by the cases, and also to show the want of authority of the attorney who appeared. (*Kerr* v. *Kerr*, 41 N. Y. 273; *Gleason* v. *Dobb*, 4 Met. 340 ; *People* v. *Dawell*, 25 Mich. 248; *Pennoyer* v. *Neff*, 5 Otto, 714.) As the record is not binding on Amanda J. Chandler, it is not binding on James S. Chandler, or the plaintiff. Estoppels must be reciprocal and binding on both parties. (Viner's Abr. "Estoppel"; *Welland Canal Co.* v. *Gudon*, 51 Ala. 377.)

SHARPSTEIN, J.:

This appeal is from a judgment and order denying a motion for a new trial in an action of ejectment. The appellant claims title under and from Mrs. Amanda J. Bingham, and the respondent claims under title deraigned from James S. Chandler.

The land was unsurveyed, and belonged to the Government of the United States until February, 1864.

In 1855 the said James S. Chandler and the said Mrs. Amanda J. Bingham were married to each other, and settled upon the land in controversy, and occupied the same in connection with other lands until February, 1864, about which time it was surveyed by

the Government, and became subject to pre-emption; and on the 18th of that month the said James S. Chandler left the premises and never returned to occupy them; never filed a declaratory statement, and did not take any steps whatever to procure a title to the land from the Government or otherwise.

On the 21st day of April, 1864, the said James S. Chandler filed a complaint for a divorce against his wife Amanda J. Chandler, (now Amanda J. Bingham) in the Court of Common Pleas of the State of Indiana, within and for Allen County of that State, and on the 23rd day of June, 1864, the said Amanda Chandler appeared in said court by her attorney, and answered the complaint so filed by a general denial, and during the same term of said court the bonds of matrimony then existing between said James S. Chandler and said Amanda J. were dissolved. It was proved by the respondent, against appellant's objection, that the attorney who appeared for the said Amanda J. in the suit for a divorce in the State of Indiana had no authority from her to appear for her in that proceeding, and that in fact she had no knowledge of the proceedings.

On the 25th day of October, 1864, the said Amanda J. Chandler commenced a suit for a divorce against the said James S. Chandler in the District Court of the Sixth Judicial District of the State of California, within and for the County of Yolo, and for cause of action against James S. Chandler alleged adultery with one Sarah Chandler, and alleged no other cause of action. These proceedings were pending until the 18th day of March, 1867, at which time a decree of divorce was granted in said suit, but the decree is silent as to any disposition of the community property.

During the pendency of the suit in Yolo County, one Francis Marion Elliott obtained title to the land in controversy from the Government of the United States, obtaining a patent therefor bearing date June 15th, 1876, and during the pendency of the same suit, May 15th, 1865, the said Francis Marion Elliott sold the premises to the said Amanda J. Chandler.

After the decree of divorce in Yolo County was entered, and on the 14th day of May, 1867, the said Amanda J. married one John Bingham, her present husband.

Continuously from May, 1865, until 1873, the said Amanda

J. resided upon the land with her husband, John Bingham. They received and enjoyed exclusively the rents and profits until that date. Their possession was open, notorious, and exclusive.

In September, 1871, Mr. and Mrs. Bingham mortgaged the land for the sum of $4,000, which mortgage was placed upon the records of the county. The land was assessed to them, or to one of them, continuously from 1865 until 1873, and the fact of such assessments appeared on record. September 27th, 1873, the said Mr. and Mrs. Bingham sold the land to the defendant, and continuously since that time he has held exclusive possession of the same.

On the 28th day of May, 1877, said James S. Chandler quitclaimed said land to the plaintiff, and this suit was commenced October 4th, 1877.

The Court found that the plaintiff was seized in fee and entitled to the land in controversy, and that the defendant withheld the possession thereof from the plaintiff, and judgment was accordingly entered in his favor.

Whether the Court erred or not, depends upon the effect which should be given in this action to the judgment of divorce obtained by the plaintiff's grantor in the State of Indiana. That judgment is not void. At most it is only voidable. Conceding that it is voidable, can the party who obtained it, or any one who occupies no better position in 'regard to it than the party who obtained it, attack and avoid it in a collateral action?

If it be voidable, it is solely so because the plaintiff's grantor obtained it by fraud. But is it voidable? Respondent's counsel say that it is, because "the Court never acquired jurisdiction over the person of Amanda J. Chandler; the attorney who filed her answer did so without her knowledge or authority." That might be sufficient to enable her to avoid the judgment if she chose to do so. But suppose that she does not. Suppose that she should choose to treat the attorney's appearance for her as if it had been authorized by her. Might she not? And if she did, would not that amount to a ratification of his action? He ostensibly appeared for her, and if she chooses to accept the result of his services while acting for her, who has a right to deprive her of it? Not the husband, at whose instance the attorney entered an appearance for her, nor the plaintiff in this action,

who was affected by that judgment to the same extent that his grantor was. It appeared to be valid upon its face; and if the plaintiff ascertained that it was not, it was not through the defendant or defendant's grantor that he found it out. He must have obtained the information from his own grantor, who had himself perpetrated the fraud, if any was perpetrated, in obtaining the judgment. We know of no principle upon which the plaintiff in that action of divorce could be permitted to impeach the judgment rendered in it, for the purpose of recovering property from the defendant in that action which he could recover on no other ground than that he had obtained that judgment by fraud. There is a maxim of law that " No man should take advantage of his own wrong." It seems to us that that maxim has been violated in this case. Fraud renders any transaction voidable at the election of the party defrauded. But we have yet to learn that the party by whom the fraud is perpetrated has that election. We had always supposed that if he overreached himself, the law would leave him to extricate himself as well as he might, without its aid. And so we still think. In this case, however, the defendant is an entire stranger to that judgment. If he had examined the record, and found that it was a valid judgment upon its face, he might have safely acted upon the presumption that it was a valid judgment. Whether he actually inspected the record or not, the law will not hold him to be affected with notice of any fact outside of that record of which he did not have actual notice. He is chargeable with what the record discloses, and with nothing beyond what it discloses, unless it be shown that he had actual notice of something outside which would render that judgment voidable. There is no evidence or even claim that he did have any actual notice or knowledge of the manner in which that judgment was obtained. The learned counsel for the respondent say that there is no proof that he ever saw that judgment or knew of its existence. That is immaterial. He stands in just as favorable a position as he would if he had actually inspected it before purchasing from one of the parties affected by it. In respect of public records, a person is no more affected by what he sees, than he is by what he might see if he examined them.

If the plaintiff in that divorce suit were the plaintiff in this

action, and the defendant in that action were the defendant in this, would a court permit the plaintiff to attack that judgment on the ground that he obtained it by fraud of which the defendant was not only innocent but ignorant? We think not. Well, the grantees of these respective parties occupy in this respect no better or worse positions than their several grantors would, if this action were between them.

The exception to the ruling of the Court upon the defendant's objection to the introduction of evidence to prove that the attorney who appeared for the defendant's grantor in the action brought by the plaintiff's grantor in Indiana for a divorce, did so without being authorized so to do by defendant's grantor, must be sustained; and for that error and the insufficiency of the evidence to justify the decision of the Court, the judgment and order denying a new trial must be reversed.

Judgment and order appealed from reversed.

MYRICK, J., and THORNTON, J., concurred.