[Civ. No. 1294. Fourth Appellate District.—February 20, 1934.]

S. A. WOODY et al., Respondents, v. SECURITY TRUST & SAVINGS BANK (a Corporation) et al., Appellants.

Frank P. Doherty, William R. Gallagher and Bourke Jones for Appellants.

M. G. Brittan for Respondents.

MARKS, J.—Plaintiffs brought this action to quiet title to eighty acres of land in Kern County. The answer of defendants is not in the record. No point is made of this omission and as both counsel agree that the answer denied title of the land in the plaintiffs and stated no affirmative defense we will assume that this correctly summarizes the missing pleading. Judgment went for plaintiffs, and defendants have appealed.

On April 22, 1890, David S. Coverdale filed his application in the United States land office to homestead land in Kern County, of which that involved in this action was a portion. The land was then a part of the public domain belonging to the government of the United States. A patent was issued to him dated the twenty-first day of June, 1892.

On September 22, 1888, the Poso Irrigation District was formed. It continued to exist as a legal entity until March 1, 1923, when it was dissolved by a decree of court. The property here involved is located within the exterior boundaries of the district. Some time prior to September 10, 1889, the district, which had been organized under the

Wright Act (Stats. 1887, p. 29), took the necessary steps to issue bonds which were subsequently validated by a decree of court.

On March 20, 1918, the board of supervisors of Kern County caused an assessment to be levied on all the real property in the district for the purpose of making payment on these outstanding bonds. An assessment was levied upon the property here involved, which was not paid. The property was sold to W. J. Williams and J. W. Deyoe, who transferred their interests to the Security Trust and Savings Bank as trustee and C. H. Barlow as beneficiary. A deed was issued to the purchasers. The complaint alleges that the property was in the possession of appellants. It is quite evident this was an error and that appellants never were in possession.

It is admitted by both parties that this property was part of the public domain at the time the district was organized and the bonds issued and therefore was not a part of the district. ■ It has been held in California that land owned by the United States government and located within the boundaries of an irrigation district when it is organized cannot be assessed to pay the debts of the district after it goes into private ownership. (*Nevada Nat. Bank* v. *Poso Irr. Dist.*, 140 Cal. 344 [73 Pac. 1056, 1058]; *Bishop* v. *Jordan*, 104 Cal. App. 319 [285 Pac. 1096].)

Appellants attempt to distinguish the instant case from that of *Bishop* v. *Jordan, supra*. On May 21, 1894, David S. Coverdale, with others, signed an agreement which appellants maintain estopped him and his successors in interest from denying that the property was subject to the assessment. Bishop signed the same agreement as did Coverdale, but did not receive his patent until after the execution and delivery of that document. In the instant case Coverdale's signing of the instrument was after he had received his patent and was the owner of the property. In this respect only the instant case differs factually from the Bishop case.

■ Respondents urge that estoppel is an affirmative defense and as it was not plead it cannot be urged by appellants. While this is ordinarily true, the record shows that evidence of the facts upon which the purported estoppel is

based was admitted without objection and that this objection was not urged in the trial court.

█ If the case of *Bishop* v. *Jordan, supra,* does not decide this question of estoppel contrary to the contention of appellants, still we have concluded that this defense is not available to them.

If estoppel is to be found it must be estoppel by contract. It is fundamental that such estoppel cannot go beyond or exceed the terms of the contract itself. The instrument signed by Coverdale, after reciting the organization of the district under the Wright Act, the issuance of the bonds and a deed of trust, covering the canals and other district property, to secure their payment, contains the following: "Now therefore in order to induce capitalists to purchase the said bonds we do hereby declare that we waive all objections to said bonds and do hereby ratify and approve the issue thereof, and we do hereby ratify and approve in all respects the action of the Board of Directors of said District in executing and delivering the said deed of trust to carry out the purpose of the laws aforesaid, to-wit: The construction and maintenance of a system of irrigation works for said district hereby pledging ourselves to pay the taxes and assessments imposed under and pursuant to said laws and in event of our failure so to do we hereby jointly and severally vest in the California Safe Deposit and Trust Company as Trustee all and singular the powers and authorities conferred or purporting to be conferred upon said Company as Trustee under the said trust deed of the 16th day of September, 1893, hereinbefore referred to. It is understood that by this instrument we obligate ourselves to comply with the said irrigation laws, known as the 'Wright Act' by the payment of the taxes or assessments levied thereunder and that we do not hereby assume any greater obligation or liability than such as are imposed by said laws, assuming them to be valid." The fair construction to be placed upon this language is that each owner of property *forming a part of* the Poso Irrigation District waived any objection which he otherwise might have been able to urge against the legality of any of the proceedings leading up to the organization of the district, the authorization and issuance of the bonds, their delivery, and the execution and

delivery of the deed of trust, and that he thereby agreed to pay taxes and assessments lawfully levied under the provisions of the Wright Act upon the property composing the district. The property here in question was never a part of the district and could not be assessed to pay any of its obligations. The patent from the United States of America to Coverdale was recorded in the office of the county recorder on August 11, 1892. Appellants and Williams and Deyoe had constructive notice on that date that the title to the property was vested in the United States of America at the time of the organization of the district and the issuance of the bonds. On September 25, 1903, the Supreme Court of California decided that land owned by the United States government could not become "a part of the Poso Irrigation District, is not subject to any lien of said judgment in favor of the plaintiff, nor to any assessment for the payment thereof, or of any debt or liability of the said Poso Irrigation District". (*Nevada Nat. Bank* v. *Poso Irr. Dist., supra.*) Williams and Deyoe purchased the property at the tax sale on September 25, 1918.

As the Coverdale property was not a part of the Poso Irrigation District and could not be assessed to pay any of its debts or liabilities, and as the instrument signed by Coverdale on May 21, 1894, can only fairly be construed to be a waiver by the owners of property lawfully a part of the district of informalities in the organization of the district, the issuance of the deed of trust and the issuance and sale of the bonds cannot be construed as estopping the successors in interest of Coverdale from asserting that the assessment of their property to pay the debts of the district, and its subsequent sale, were illegal and void.

It is well established that a contract upon which an estoppel is based must not contravene the law or be against public policy. The interpretation which appellants would have us place upon the agreement of May 21, 1894, in order to sustain their theory of estoppel, would have the effect of placing, by contract, private property within the irrigation district, and making it a part of the district without following any of the provisions of the law whereby such a result may be obtained. The Wright Act, and the acts amendatory and supplementary, provided in detail the man-

ner in which irrigation districts could be formed and what property could be included therein or excluded therefrom or annexed thereto. An irrigation district possesses governmental functions and is a creature of law which can only be brought into being under the direct authority of the state. It cannot be created by contract nor can property be brought within its jurisdiction in any other way than that provided by statute.

 It seems to have been held in *American Nat. Bank* v. *A. G. Sommerville, Inc.,* 191 Cal. 364, at pages 371, 372 [216 Pac. 376], that estoppel by contract can only arise in cases where the contract is supported by a consideration. If this is a fair construction to be put upon the holding in this case, estoppel by contract cannot arise in the instant case because there was no consideration flowing to Coverdale for his signature on the agreement of May 21, 1894. The Wright Act and the amendments of 1891 (Stats. 1891, p. 142) clearly provide that the water belonging to the district must be apportioned among the owners of property forming a part of the district in the proportions there determined. No authority is given to furnish water to any lands not forming a part of the district. As the lands of Coverdale did not form a part of the district he could receive none of its water and could receive no consideration for his signature to the agreement.

 Appellants contend that section 3805a of the Political Code (Stats. 1905, p. 90) furnished a way for respondents to remove the assessment from the land and having failed to do so they cannot now complain of the assessment and the sale. It should be sufficient to note that the patent to the property was issued in 1892 and the assessment was levied in 1918. With these dates in mind the inapplicability of the section to the facts of this case is apparent as the United States had parted with its title to the property in 1892 and the land was privately owned when the assessment was levied in 1918.

 Appellants maintain that the judgment must be reversed because it did not provide for the repayment to them of the amount of the assessment as provided in subdivision five of section 3898 of the Political Code. The provisions of this subdivision are limited by its terms to tax

sales had under sections 3771, 3897 and 3898 of the Political Code. The Wright Act and the California Irrigation District Act (Stats. 1897, p. 254), which supplemented it, contain detailed provisions for the assessment of property and the collection of delinquencies which control such proceedings in irrigation districts coming under their provisions. (*McDonough* v. *Cooper,* 179 Cal. 384 [177 Pac. 153].) These acts contain no provisions similar to those of subdivision five of section 3898 of the Political Code. Tender or repayment of the money paid by appellants is not required by any statute as a prerequisite to quieting title against them. However, it has been held that the familiar rule, that one seeking equity must do equity, applies to those actions to quiet a title against a tax deed where the plaintiff in good conscience should have paid the tax in the first instance. In *Cordano* v. *Kelsey,* 28 Cal. App. 9, at page 22 [151 Pac. 391, 397, 398], it is said: "Respondents cite 2 Cooley on Taxation, pages 455, 1458, where it is said: 'If the tax were wholly illegal in its essentials, of course no such requirement (to reimburse the purchaser) could be made, for it would not be supported by any equity. As in removing cloud from title, he who seeks relief against a tax-deed must pay or offer to pay whatever taxes, interest, costs, etc., are justly chargeable against the land, and payment will be required by the decree; otherwise, where the taxes were absolutely void.'" In *Coleman* v. *County of Los Angeles,* 180 Cal. 714, at page 718 [182 Pac. 440, 441], it is said: "It was also held that where the assessment itself was void, as well as the sale, that no payment would be required from the owner as a condition precedent to the quieting of his title." The property in question here was never a part of the Poso Irrigation District and it could never become liable for any tax or assessment levied by or on behalf of the district. (*Nevada Nat. Bank* v. *Poso Irr. Dist., supra; Bishop* v. *Jordan, supra.*) It follows that no obligation, either moral or legal, could be imposed on the owners of the property to pay any assessment levied for the benefit of the district and consequently it would be inequitable to order the repayment of money voluntarily paid by appellants in satisfaction of a nonexistent indebtedness.

All other contentions of appellants are resolved against them by the cases of *Nevada Nat. Bank* v. *Poso Irr. Dist.,* *supra;* and *Bishop* v. *Jordan, supra.*

Judgment affirmed.

Barnard, P. J., and Jennings, J., concurred.

A petition by appellants to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on April 20. 1934.