[Civ. No. 11348. First Appellate District, Division Two.—April 24, 1940.]

In the Matter of the Estate of JAMES R. DAVIS, Deceased. JOHN B. DAVIS, Appellant, v. CHRISTINA ELIZABETH DAVIS, Respondent.

Daniel M. Potter and George S. Hupp for Appellant.

Rea, Free & Jacka and Irvin A. Frasse for Respondent.

NOURSE, P. J.—The petitioner in a proceeding to determine heirship appeals from an adverse judgment. The petitioner is a surviving son of James R. Davis, deceased. The respondent is the reputed wife of deceased, claiming under a second marriage contracted in Reno, Nevada, February 27, 1936.

The three questions stated by appellant present but one legal inquiry: Is a decree of divorce entered in a foreign state upon a simulated and fraudulent residence open to attack by an interested party who was not a party to the fraud?

582

■ This issue is controlled by these accepted legal principles: (1) "A foreign divorce obtained through assumed residence is not in good faith, and is open to attack in the state of the true matrimonial domicile, and the parties sought to be bound by it may always impeach its validity and escape its effect by showing that the court which rendered it had no jurisdiction over the parties or the subject-matter of the action, and its jurisdiction may be controverted by extraneous evidence." (*Kegley* v. *Kegley,* 16 Cal. App. (2d) 216, 221 [60 Pac. (2d) 482]; 17 Am. Jur., sec. 742 et seq.) ■ (2) Such a decree may be attacked collaterally on proof that the court granting it had no jurisdiction because of want of domicile of the plaintiff. (*Kegley* v. *Kegley, supra,* 220.) (3) No act of the parties in the nature of waiver, stipulation, appearance, consent or estoppel can confer upon a foreign court a jurisdiction which it does not possess when the subject matter of the controversy is beyond its limitations. (*Idem,* p. 220; *Estate of Bruneman,* 32 Cal. App. (2d) 606, 608 [90 Pac. (2d) 323]; *Estate of McNutt,* 36 Cal. App. (2d) 542 [98 Pac. (2d) 253].)

The last principle is stated in the purity of its acceptance as a rule of law distinguishing jurisdiction of the *res* from that of the person, and before its corruption by rules of convenience, necessity and public policy. The decisions uniformly recognize the true principle, but many and varied exceptions have been established by applying the rule of estoppel, acquiescence or consent. *Bruguiere* v. *Bruguiere,* 172 Cal. 199, 204 [155 Pac. 988, Ann. Cas. 1917E, 122], held a wife, ·divorced by her husband in a court of a state other than that of his residence, was estopped from attacking the decree because of her subsequent marriage to another. This exception is reaffirmed in *Kelsey* v. *Miller,* 203 Cal. 61, 87 [263 Pac. 200], and is followed in many other jurisdictions. But we find no authority for the contention of respondent that ·the mere appearance or consent of the defendant is sufficient to confer jurisdiction upon the court which otherwise would have no jurisdiction of the subject matter. The leading case to the contrary is *Andrews* v. *Andrews,* 188 U. S. 14 [23 Sup. Ct. 237,·47 L. Ed. 366], where at page 41 the Supreme Court said: "But it is obvious that the inadequacy of the appearance or consent of one person to confer jurisdiction over a subject matter not resting on consent includes

necessarily the want of power of both parties to endow the court with jurisdiction over a subject matter, which appearance or consent could not give.'' (17 Am. Jur., sec. 759; *Langewald* v. *Langewald*, 234 Mass. 269 [125 N. E. 566].)

Respondent concedes the rule of *Ryder* v. *Ryder*, 2 Cal. App. (2d) 426 [37 Pac. (2d) 1069]; *Kegley* v. *Kegley*, 16 Cal. App. (2d) 216 [60 Pac. (2d) 482]; *People* v. *Harlow*, 9 Cal. App. (2d) 643 [50 Pac. (2d) 1052]; *Bruguiere* v. *Bruguiere, supra; Delanoy* v. *Delanoy*, 216 Cal. 27, 34 [13 Pac. (2d) 719, 86 A. L. R. 1321], and similar cases holding that a foreign decree of divorce may be attacked collaterally upon showing that the court granting it had no jurisdiction because of want of domicile of the plaintiff. But respondent says these authorities are not applicable here because they all involved foreign divorces granted upon substituted service of process. This is not a fair distinction of either the Ryder or the Kegley case, as the defendant in each case gave consent to the entry of the foreign decree. In *Estate of Bruneman*, 32 Cal. App. (2d) 606 [90 Pac. (2d) 323], and *Estate of McNutt*, 36 Cal. App. (2d) 542 [98 Pac. (2d) 253], the wife executed a written document consenting to the entry of the foreign decree and made a property settlement. This fact was stressed in the dissenting opinion in the latter case, but the majority held, nevertheless, that she was without power to confer jurisdiction on the foreign court and was entitled to attack that decree as void for want of jurisdiction. The Supreme Court denied a hearing in that case and the rule may now be deemed settled that such decrees may be open to attack irrespective of the form of appearance made in the divorce court.

Respondent argues that appellant is estopped from attacking the divorce because his father persuaded respondent to go to Reno and procure a divorce; agreed to pay her expenses there, and the cost of the divorce; persuaded her to marry him immediately after the decree was entered, and thereby led her to believe that the divorce was valid. Respondent says that such conduct would estop the father, hence that it should estop the son who succeeds to his property rights. Appellant does not answer the argument, but rests upon the broad assertion that a divorce obtained under these circumstances is always open to attack. ■ It will be taken for

granted that when a judgment is open to attack the rights of the party attacking it rest upon equitable principles so that the granting or denial of the relief sought is largely in the discretion of the trial court. Hence, the right of an innocent party to be relieved from the effects of a fraudulent decree is stronger in a court of equity than the right of one who has to some extent participated in the fraud. In the Bruneman case and in the McNutt case the "offended" wife was held not estopped to question a fraudulent decree procured by her husband with her consent. The rulings seem to have been influenced by the charitable view that the wife in each case was not altogether free from domination by the husband who procured her consent to the proceedings. This view was frankly accepted without equivocation by the Mississippi court in *Hopkins* v. *Hopkins,* 174 Miss. 643 [165 So. 414]. The accepted rule, free from emotionalism, is found in "Restatement of the Law of Conflict of Laws," sec. 112 as follows: "The validity of a divorce decree cannot be questioned in a proceeding concerning any right or other interest arising out of the marital relation, either by a spouse who has obtained such decree of divorce from a court which had no jurisdiction, or by a spouse who takes advantage of such decree by remarrying."

The California doctrine is based upon subdivision 3 of section 1962 of the Code of Civil Procedure, which prohibits a party from denying an act which he has deliberately led another to believe and act upon as true. Though ignorance of the truth is a primary essential on the part of the one pleading an estoppel *in pais,* our courts have recognized another species of estoppel, called *"quasi* estoppel," which is based upon the principle that one cannot blow both hot and cold, or that one "with full knowledge of the facts shall not be permitted to act in a manner inconsistent with his former position or conduct to the injury of another". (10 Cal. Jur., p. 645; *McDanels* v. *General Ins. Co.,* 1 Cal. App. (2d) 454, 459 [36 Pac. (2d) 829].) Another way of stating the same general principle (applicable directly to the instant case) is that one who has invoked the exercise of a jurisdiction within the general powers of the court cannot seek to reverse its orders upon the ground of lack of jurisdiction. "The principle opposing such action is one of estoppel in the interest of a sound administration of the laws whereby

the regularity or even validity of an act procured by one himself cannot be raised—not that the act is valid, for it may not be, and estoppel does not make valid the thing complained of, but merely closes the mouth of the complainant. (*Spence* v. *State Nat. Bank,* (Tex. Com. App.) 5 S. W. (2d) 754.) The principle is known as the doctrine of acquiescence, often referred to as *quasi* estoppel.'' (*Spohn Co.* v. *Bender,* 18 Cal. App. (2d) 447, 451 [64 Pac. (2d) 152].)

█ Here the undisputed facts are that the deceased urged the respondent herein to go to Nevada, establish a residence for the sole purpose of securing a divorce, and then to marry him. He promised her that he would pay her expenses and the costs of the divorce. He went to Reno and took active part in the preparation of the case and married her on the day the divorce was granted. He then returned with respondent to California, where he made a home for her and held himself out as her lawful husband until the time of his death. These facts present a typical case where the one party —the deceased—having been the prime mover in the fraud upon the Nevada court, and upon the state, would have been foreclosed from denying the validity of the divorce or the subsequent marriage under the doctrine of *quasi* estoppel above noted. There remains for consideration the question whether such estoppel should be applied to his son and heir.

█ As a general rule, an heir, being in privity with the ancestor, is bound by an estoppel which was binding upon the ancestor. (19 Am. Jur., p. 811.) In *Elliott* v. *Wohlfrom,* 55 Cal. 384, 388, our Supreme Court held that, since a former husband could not attack a judgment of divorce upon the ground that it was obtained by his own fraud, the grantees of the husband were in no better position than he, and they would be estopped from attacking the judgment. The case does not appear to have been cited subsequently. Respondent rests the point on two other cases, which are of no value. *Kaufman* v. *Kaufman,* 177 App. Div. 162 [163 N. Y. Supp. 566], does not touch the question. *Curry* v. *Curry,* 79 Fed. (2d) 172, 174 [65 App. D. C. 47], contains the statement that the principle denying a party participant the right to attack a decree which he has obtained through fraud is ''not confined to the active parties in matters of divorce''. No authorities are cited in support of the statement, which was voluntary, as the question was not involved

in that litigation. The appellant herein relies entirely upon a quotation from 15 Ruling Case Law, page 841, reading: ''On the other hand, it is generally held that where the rights of persons not parties or privies to a proceeding are adversely affected by the judgment rendered therein such persons are allowed to impeach it whenever it is attempted to be enforced against them, or whenever in any suit its validity is drawn in question, since they have no remedy against the judgment, by appeal or otherwise, in the case itself.'' The learned authors of restatement on ''Conflict of Laws'' decline to pass on the question with the ''*caveat*'' appearing on page 170, reading: ''Nor is any opinion expressed as to whether the children of a prior marriage, or a third person, may be precluded from questioning the validity of a divorce decree under the circumstances described in this section.''

With this scarcity of authority we are inclined to the view so briefly stated in *Elliott* v. *Wohlfrom, supra,* that the grantees of the principal who perpetrated the fraud are in no better position than he, and that, upon reason and principle, the same rule should apply to his heirs. A different rule might apply where the judgment under attack is void on its face, but where, as here, the attack on the judgment or decree is based upon the fraud of the ancestor in procuring it, the heir or grantee of such party should not be permitted to profit by such fraud in an attack upon the decree based entirely on the ground that the decree was procured by such fraud.

The judgment is affirmed.

Sturtevant, J., and Spence, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on May 21, 1940, and the following opinion then rendered thereon:

THE In his petition for a rehearing counsel for appellant takes us to task because we did not cover the point relating to the failure of respondent to plead an estoppel. He cites authorities to the general rule that the party relying upon estoppel must plead it, otherwise it will be deemed waived. Like all other rules of law and procedure this one has its exceptions.

There are so many grounds upon which appellant's argument shatters that we will be content with stating them without expansion of the reasons controlling the principles. (1) The proceedings were taken under section 1080 of the Probate Code to declare heirship. That section permits any person to appear and file a written statement setting forth his interest in the estate. "No other pleadings are necessary." The defendant-respondent complied with the terms of this section. ■ (2) The case was tried in the court below upon the mutual belief that estoppel was an issue, and the evidence covering the issue was admitted without objection, and upon the invitation of appellant. He may not object for the first time on appeal that the issue was not properly pleaded. (2 Cal. Jur., p. 239; *Woody* v. *Security Trust & Sav. Bank*, 137 Cal. App. 29, 32 [29 Pac. (2d) 898].) ■ (3) The appellant, having invited the trial of the issue of estoppel, filed an opening and a closing brief in which he failed to mention the question of pleading. This point was raised in the oral argument for the first time. When a question is raised in this manner by an appellant to defeat a judgment there is greater reason why it should be disregarded than when it is raised by the respondent to support the presumption of the validity of the judgment. Here neither the trial court nor the respondent was given an opportunity to consider the question whether in a special proceeding under section 1080 of the Probate Code, it is necessary to plead the facts of estoppel. For these reasons the question should not be heard here when raised for the first time on the oral argument.

The petition is denied.

A petition by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on June 20, 1940.