Opinion
BENKE, Acting P. J.
In Cedars-Sinai Medical Center v. Superior Court (1998) 18 Cal.4th 1, 5 [74 Cal.Rptr.2d 248, 954 P.2d 511] (Cedars-Sinai), *339 our Supreme Court determined there is no cause of action for intentional spoliation of evidence by a litigation adversary.[1] Although its opinion on the issue was not rendered until after the judgment in this case was entered, its opinion governs our review of the judgment. Accordingly, we must vacate that portion of the judgment which awarded plaintiff and respondent Janet Penn $95,000 for intentional spoliation of videotapes from a surveillance camera controlled by defendant and appellant Prestige Stations, Inc. (Prestige). Because, aside from the spoliation of evidence, there was no other basis upon which to award punitive damages, we must also vacate the jury’s $500,000 punitive damage award.
Summary
On the evening of November 2, 1995, Penn went to a convenience store operated by Prestige. She went to the back of the store to get a soda and milk. After taking a two-liter bottle of soda from a display shelf she took a few steps toward the milk, lost her footing and fell. A store employee who went to assist Penn noticed that water was on the floor in the area where Penn fell.
According to her treating neurologist, as a result of the fall Penn suffered nerve damage in her left shoulder and arm and a bulge of a spinal disc in her neck.
Penn filed a complaint against Prestige in which she alleged Prestige had negligently permitted a dangerous condition to exist at the store and that the condition, the wet floor, had caused her injuries. During the course of discovery Prestige disclosed that although surveillance cameras in the store were operating at the time of Penn’s fall and although a Prestige supervisor was aware of Penn’s potential claim, the supervisor, defendant and appellant Marlene Sheet, ordered that videotapes from the day of the fall be reused in the store’s cameras, effectively erasing any evidence of the fall or the conditions of the store at the time of the fall.
After learning Prestige had destroyed any video record of her fall or conditions at the store, Penn amended her complaint to add Sheet as a defendant and causes of action against Prestige and Sheet for intentional and negligent spoliation of evidence.
Trial commenced in March 1998. At trial the jury found Prestige was negligent in maintaining the store and that its negligence had caused $38,500 *340 in damages. However, the jury also found Penn had been 25 percent contributorily negligent.
With respect to Penn’s spoliation causes of action, the jury found Sheet and Prestige were liable for intentional spoliation and that in the absence of their conduct Penn would have recovered an additional $80,000. The jury also found that the spoliation had caused Penn to incur $15,000 in out-of-pocket losses. As against Prestige only, the jury awarded Penn $500,000 in punitive damages.
Shortly after entry of judgment the Supreme Court filed its opinion in Cedars-Sinai. In light of Cedars-Sinai, Prestige argues that those portions of the judgment based on the spoliation of evidence must be reversed.
Discussion
Prior to its opinion in Cedars-Sinai, our Supreme Court had “not previously addressed the question of whether tort remedies should exist for acts of spoliation.” (Cedars-Sinai, supra, 18 Cal.4th at p. 5, fn. omitted.) Although the tort had been recognized in California Court of Appeal opinions (see Willard v. Caterpillar, Inc. (1995) 40 Cal.App.4th 892 [48 Cal.Rptr.2d 607] (Willard); Smith v. Superior Court (1984) 151 Cal.App.3d 491 [198 Cal.Rptr. 829] (Smith)), it had been rejected by other state courts and subjected to scholarly criticism. (See Petrik v. Monarch Printing Corp. (1986) 150 Ill.App.3d 248 [103 Ill.Dec. 774, 501 N.E.2d 1312, 1320]; Federated Mut. Ins. Co. v. Litchfield Precision Component, Inc. (Minn. 1990) 456 N.W.2d 434, 438; see also Comment, Spoliation of Evidence: A Troubling New Tort (1989) 37 U.Kan. L.Rev. 563, 592.)
In rejecting the tort, the court found that it was inconsistent with the general principle which bars tort remedies for litigation-related misconduct and the related prohibition against attacking adjudications on the ground evidence presented was falsified or destroyed. (Cedars-Sinai, supra, 18 Cal.4th at pp. 9-11.) The court noted there are a number of nontort remedies that seek to punish and deter spoliation, including an evidentiary inference that destroyed evidence is unfavorable to the party that destroyed it (Evid. Code, § 413), discovery sanctions (Code Civ. Proc., § 2023), and disciplinary sanctions against attorneys and criminal penalties. (18 Cal.4th at pp. 11-13.)
The court also found that in most cases of spoliation, it will be difficult to determine whether in fact a plaintiff has been damaged. (Cedars-Sinai, supra, 18 Cal.4th at pp. 13-14.) Finally, the court found that the cost of defending spoliation claims would cause persons and entities “to take extraordinary measures to preserve for an indefinite period documents and *341 things of no apparent value solely to avoid the possibility of spoliation liability if years later those items turn out to have some potential relevance to future litigation.” (Id. at p. 15.)
The court concluded, “[g]iven that existing remedies will in most cases be effective at ensuring that the issues in the underlying litigation are fairly decided, whatever incremental additional benefits a tort remedy might create are outweighed by the policy considerations described above.” (Cedars-Sinai, supra, 18 Cal.4th at p. 17.)
The question we face, which was unanswered in the Cedars-Sinai opinion itself, is whether the holding in that case governs cases still pending at the time it was decided.
The general rule is that judicial decisions are given retroactive effect. (Newman v. Emerson Radio Corp. (1989) 48 Cal.3d 973, 978 [258 Cal.Rptr. 592, 772 P.2d 1059] (Newman).) As the court in Newman observed, quoting Justice Traynor, “ ‘the hardship on parties who would be saddled with an unjust precedent if the overruling were not made retroactive, ordinarily outweighs any hardship on those who acted under the old rule or any benefits that might be derived from limiting the new rule to prospective operation. Neither the tortfeasor nor the victim normally takes account of expanding or contracting rules of tort liability except tangentially in the course of routinely insuring against such liability.’ ” (Id. at p. 981.)
Admittedly, the court has on occasion departed from the general rule and limited retroactive application of a decision when “considerations of fairness and public policy are so compelling in a particular case that, on balance, they outweigh the considerations that underlie the basic rule.” (Newman, supra, 48 Cal.3d at p. 983; see, e.g., Moradi-Shalal v. Fireman’s Fund Ins. Companies (1988) 46 Cal.3d 287, 305 [250 Cal.Rptr. 116, 758 P.2d 58]; Li v. Yellow Cab Co. (1975) 13 Cal.3d 804, 829 [119 Cal.Rptr. 858, 532 P.2d 1226, 78 A.L.R.3d 393].) Considerations of fairness take into account the factors of foreseeability and reliance, while public policy considerations include the purpose to be served by the new rule and the effect on the administration of justice of retroactive application. (Newman, supra, 48 Cal.3d at p. 986.)
Here, it cannot be said that the decision in Cedars-Sinai was in any sense unforeseeable. Indeed, where as here the Supreme Court has not previously issued a definitive decision, “from the outset any reliance on the previous state of the law could not and should not have been viewed as firmly fixed as would have been the case had we previously spoken.” *342 (Newman, supra, 48 Cal.3d at pp. 986-987.) Although following the opinion in Smith, which first found a tort remedy for spoliation, it took the Supreme Court 12 years to grant review in Cedars-Sinai, in no sense during the interim period was the tort remedy fully embraced. Only three years after Smith was decided, the Supreme Court itself noted that the central premise of Smith, that a litigant’s interest in litigation was the sort of economic advantage which merited protection by way of a tort remedy, represented, with one exception, “the most speculative advantage that has heretofore been recognized by the California appellate courts.” (Youst v. Longo (1987) 43 Cal.3d 64, 73 [233 Cal.Rptr. 294, 729 P.2d 728, 85 A.L.R.4th 1025].)
Moreover, as late as 1995 the court in Willard noted that following Smith and Velasco v. Commercial Bldg. Maintenance Co. (1985) 169 Cal.App.3d 874, 877 [215 Cal.Rptr. 504], in which the tort of negligent spoliation was recognized, “[subsequent decisions have provided little detail regarding the contours of these torts.” (Willard, supra, 40 Cal.App.4th at p. 908.) The court in Willard further acknowledged that “[s]everal courts have refused to recognize the spoliation tort for policy reasons. [Citations.] Others declined to adopt the tort on the ground traditional remedies for the destruction of evidence were sufficient to protect spoliation victims and to deter future wrongdoers. [Citations.]” (Id. at p. 910.) Significantly, although the court in Willard was willing to recognize the tort of intentional destruction of evidence in some instances, it was unwilling to do so in the case before it. Rather, it found that on the record it was considering, the social costs associated with the tort outweighed the benefits the tort remedy provided. (Id. at p. 924.) Much like the court in Cedars-Sinai, supra, 18 Cal.4th at page 15, the court in Willard recognized that “subjecting individuals and businesses to potential tort liability for destroying their own property or documents necessarily imposes burdens which result in both economic cost and some loss of freedom.” (Willard, supra, 40 Cal.App.4th at p. 924.) Importantly, the court in Willard also expressly recognized that its conclusions about the tort were subject to more definitive determination by the California Supreme Court and the Legislature. (Ibid.)
Given this jurisprudential history, no litigant could fairly claim that the Supreme Court’s unwillingness to recognize the tort was in any sense an extraordinary or unexpected departure from well-established precedent.
Spoliation plaintiffs such as Penn also have some difficulty showing that they have relied on the law as it existed prior to Cedars-Sinai. (2b) In determining whether a new precedent should be subject to any exception to the usual rule requiring retroactivity, a major component of the analysis focuses on the extent of reliance by litigants on existing law. (Newman, *343 supra, 48 Cal.Sd at p. 989.) Such reliance is most compelling “when a party has acquired a vested right or entered into a contract based on the former rule, and we are more reluctant to apply our decisions retroactively in those cases. [Citations.]” (Ibid.) When, as here, the new precedent deals with either the expansion or contraction of a tort remedy, it is unlikely that either the plaintiff or defendant has considered the state of existing law. (Id. at pp. 989-990.) “Rather, we are faced with the much more familiar situation in which a litigant may have entered into litigation in reliance on the existence of a cause of action which is subsequently rejected, limited or ruled out of existence by later case law.” (Id. at p. 990.)
In some instances courts have considered a plaintiff’s pursuit of an existing remedy reason for prospective application of a new rule, but only when the new rule was procedural and its effect was to deprive the plaintiffs of any substantive remedy. (Newman, supra, 48 Cal.3d at p. 990.) One can easily appreciate the unfairness of depriving a litigant, on wholly new procedural grounds, of a substantive remedy which remains unquestioned. Here in contrast, we are dealing with our Supreme Court’s unwillingness to adopt a substantive form of liability which did not leave plaintiffs such as Penn remediless. They may still pursue their underlying damage claims, which they may establish with the evidentiary inference allowed by Evidence Code section 413.
With respect to reliance it is also important to reiterate that even following Cedars-Sinai, the intentional destruction of evidence needed in litigation is subject to severe sanctions in the litigation itself, in administrative proceedings against lawyers who participate in such destruction, and in our criminal justice system. (See Cedars-Sinai, supra, 18 Cal.4th at pp. 11-13.) Thus Cedars-Sinai did not alter the prohibition against destroying evidence needed in litigation; rather, it only changed the nature of the remedy available when a violation of the prohibition occurs. (See Newman, supra, 48 Cal.3d at p. 991.)
Next, we note that the rationale employed by the court in Cedars-Sinai supports retroactive application of the rule it announced. The general rule which bars tort remedies for litigation-related misconduct and the related need for finality apply with equal if not more force to still-pending cases. The unsettling and burdensome consequences of litigation based solely upon litigation misconduct can best be avoided by applying to all pending cases the rule which eliminates the source of the litigation. Moreover, the social cost of the spoliation tort—the need to preserve vast amounts of otherwise valueless information and objects—still exists in cases pending at the time Cedars-Sinai was decided. In cases filed after Cedars-Sinai and undisputedly *344 subject to it, litigants may conduct their affairs free from potential tort liability for destruction of evidence. Litigants in the large volume of litigation pending at the time Cedars-Sinai was decided would benefit greatly from the assurance that they can now act prudently with respect to their own property without fear that their conduct will give rise to an amended complaint adding a grandfathered spoliation claim.
By the same token were we to preserve any spoliation claims, we would perpetuate the difficulty courts have faced in determining whether in fact an act of spoliation has caused compensable harm. (See Cedars-Sinai, supra, 18 Cal.App.4th at pp. 13-15.) Indeed, here one of Prestige’s claims on appeal is that because the jury found that Penn’s fall caused her a total of $38,000 in damages, there is no rational basis upon which to find that she suffered another $95,000 by virtue of the destruction of the surveillance tapes.
Finally, we do not perceive that giving Cedars-Sinai full retroactivity will create any burdens on the administration of justice. In cases pending at the time Cedars-Sinai was decided and where the destruction of evidence has not yet been discovered, full retroactivity will of course prevent litigation of what our Supreme Court has determined are unduly burdensome claims. With respect to spoliation claims that were either asserted or fully litigated in the trial courts at the time Cedar-Sinai was rendered can be disposed of by the relatively simple expedient of dismissing discrete spoliation allegations or, as here, striking discrete portions of judgments which included spoliation damages. (See Newman, supra, 48 Cal.3d at p. 992.)
In sum then, none of the factors that might permit a court to make an exception to the usual rule of full retroactivity exist with respect to the Cedars-Sinai decision. Accordingly, because they are based solely upon Prestige’s intentional destruction of the surveillance tapes, both the award of $95,000 in compensatory damages for spoliation and the $500,000 in exemplary damages must be vacated.
We reject Penn’s alternative suggestion that if Cedars-Sinai applies to her case, we should nonetheless uphold the compensatory damages because the record is sufficient to support a cause of action for negligent spoliation. Although the Supreme Court has yet to address the issue of negligent spoliation (see Temple, supra, 20 Cal.4th at p. 471, fn. 3), arguably the policy reasons which the Supreme Court relied upon in Cedars-Sinai and Temple—the law’s bias against litigation-related torts, the need for finality, the social cost of requiring preservation of evidence, and the speculative nature of any harm—also defeat recognition of liability based on the negligent destruction of evidence. (See Coprich v. Superior Court (2000) 80 *345 Cal.App.4th 1081, 1088-1089 [95 Cal.Rptr.2d 884]; Farmers Ins. Exchange v. Superior Court (2000) 79 Cal.App.4th 1400, 1404-1405 [95 Cal.Rptr.2d 51].)
Moreover, even those cases which, following Cedars-Sinai, have recognized a duty of care with respect to evidence needed in litigation, have done so only when a third party defendant not potentially liable on the underlying tort has expressly agreed to preserve the evidence or has a special relationship with the plaintiff which includes such an undertaking. (See, e.g., Johnson v. United Services Automobile Assn. (1998) 67 Cal.App.4th 626, 638 [79 Cal.Rptr.2d 234]; Galanek v. Wismar (1999) 68 Cal.App.4th 1417, 1424-1425 [81 Cal.Rptr.2d 236].) The court in Johnson v. United Services Automobile Assn, permitted such third party liability to exist because it found that litigation with a third party does not implicate the policy against litigation-related torts and because as against a third party, nontort remedies are not adequate. (Johnson v. United Services Automobile Assn., supra, 67 Cal.App.4th at pp. 631-632.) In Galanek v. Wismar we found that a lawyer’s failure to preserve evidence may give rise to liability for malpractice. (Galanek v. Wismar, supra, 68 Cal.App.4th at pp. 1424-1425.) Here of course Prestige was not a third party, but in fact the tortfeasor responsible for Penn’s injuries. Although Sheet was a third party, there is no evidence in the record that she agreed to preserve the surveillance tape or was obligated to do so. Thus, even if in some circumstances the failure to exercise due care with respect evidence may be compensable, such circumstances do not appear in this record.
Penn points out that other than prejudgment interest, which the trial court permitted, all of her cost bill was taxed on the grounds that her costs had already been included in the jury’s award for out-of-pocket losses caused by the spoliation. We agree with Penn’s contention that if, as is the case, her spoliation award must be vacated, the trial court must reconsider her cost bill.[2]
Accordingly, we reverse the judgment with instructions to vacate the $95,000 in compensatory damages awarded for spoliation as well as the *346 $500,000 in exemplary damages and to reconsider Penn’s cost bill in light of our disposition. In all other respects the judgment is affirmed.
Appellants to recover their costs of appeal.
Huffman, J., and Nares, J., concurred.
A petition for a rehearing was denied September 21, 2000, and respondent’s petition for review by the Supreme Court was denied November 15, 2000. Mosk, J., was of the opinion that the petition should be granted.

The court has also determined that there is no cause of action for intentional spoliation of evidence by a third party. (See Temple Community Hospital v. Superior Court (1999) 20 Cal.4th 464, 466 [84 Cal.Rptr.2d 852, 976 P.2d 223] (Temple).)

Although not set forth in her respondent’s brief, at oral argument Penn asked that in the event we give retroactive application to Cedars-Sinai, we also modify the judgment to impose discovery sanctions in the amount of the compensatory damages found on the spoliation claim. In making this suggestion she relies on the fact that in both Cedars-Sinai and Temple the Supreme Court found that discovery sanctions under Code of Civil Procedure section 2023 was one of the remedies that makes it unnecessary to recognize a spoliation tort. (See Cedars-Sinai, supra, 18 Cal.4th at p. 12; Temple, supra, 20 Cal.4th at p. 474.) We decline Penn’s suggestion. For obvious reasons of fairness, it is not appropriate to rely upon points not mentioned in the parties’ briefs. (See Estate of Davis (1940) 38 Cal.App.2d 579, 587 [101 P.2d 761]; 9 Witkin, Cal. Procedure (4th ed. 1997) Appeal, § 665, p. 698.)