WADDELL, APPELLANT, *v.* SCHOOL DISTRICT No. 2 OF
YELLOWSTONE COUNTY, RESPONDENT.

(No. 5,729.)

(Submitted June 19, 1925. Decided July 6, 1925.)

[238 Pac. 884.]

*Ejectment—Adverse Possession—Licensees—Estoppel in Pais.*

Real Property—Adverse Possession—Parol Licensees cannot Assert.
  1.  Occupancy of land under a parol license from the owner pre-
cludes claim thereto by adverse possession.

Estoppel *in Pais*—Essentials.
  2.  To constitute estoppel *in pais*, the party to be estopped must
have been possessed of knowledge of the true facts or conditions,
he must have intended that his statements should be acted upon,
or must have so acted that the party asserting the estoppel had
a right to believe that he so intended, must have been ignorant
of the true state of facts, and relied upon the representations or
conduct of the party to be estopped to his prejudice.

Real Property — Occupancy — Parol License — Estoppel *in Pais* — De-
fense Inapplicable.
  3.  Where plaintiff's predecessor in interest had given a school
district parol license to erect a frame school building upon his
land and to use about an acre thereof for school purposes, noth-
ing being said or done by him to mislead the trustees to the
prejudice of the licensee and the board accepted the offer with
full knowledge of the condition of the title and the terms of the
license, plaintiff was not estopped to assert title to the land upon
abandonment of the school.

Adverse Possession, 2 C. J., sec. 226, p. 132, n. 9.
Estoppel, 21 C. J., sec. 124, p. 1120, n. 19, p. 1121, n. 20; sec.
126, p. 1123, n. 36; sec. 130, p. 1126, n. 51; sec. 131, p. 1129, n. 59.
Licenses, 37 C. J., sec. 193, p. 290, n. 37.

*Appeal from District Court, Yellowstone County; Robert C.
Stong, Judge.*

1.  Essentials of adverse possession, notes, 28 **Am. St. Rep.** 153;
88 **Am. St. Rep.** 701.
2.  See 10 **R. C. L.** 688.
3.  Revocability of license to maintain burden on land after
licensee has incurred expense in reliance thereon, see notes in 7
**Ann. Cas.** 706; 13 **Ann. Cas.** 843; **Ann. Cas.** 1913A, 74; 49 **L. R. A.**
497; 19 **L. R. A. (n. s.)** 700, 25 **L. R. A. (n. s.)** 727. See, also, 17
**R. C. L.** 583.

ACTION by Charles A. Waddell against School District No. 2 of Yellowstone County. Judgment for defendant and plaintiff appeals. Reversed and remanded, with directions to enter judgment for plaintiff.

*Messrs. Myers & Huntington,* for Appellant, submitted a brief and one in reply to that of Respondent; *Mr. Henry L. Myers* argued the cause orally.

*Mr. John B. Tansil* and *Mr. George S. Smith,* for Respondent, submitted a brief; *Mr. Smith* argued the cause orally.

MR. JUSTICE GALEN delivered the opinion of the court.

In this action the plaintiff, under claim of ownership, seeks to obtain the possession of about two-fifths of an acre of land in Yellowstone county, occupied by the defendant. The complaint is in two counts, the first being in ejectment, and the second in equity to enjoin the defendant from occupying or using the premises involved. The allegations of the plaintiff's complaint are denied generally by the answer, and, additionally, adverse possession and estoppel are affirmatively pleaded. Issue was joined by the plaintiff's reply to the answer, and the cause was tried to the court without a jury. The court made its findings of fact and conclusions of law against the plaintiff and in favor of the defendant, upon which judgment was regularly entered. Plaintiff having been denied a new trial, this appeal is taken from the judgment.

The plaintiff specifies twenty assignments of error. However, in view of the court's findings of facts and the declaration made by counsel for the defendant on the oral argument of this appeal, that, in order to sustain the judgment, reliance is *placed entirely* upon the rule of equitable estoppel,

we need go no further than to determine whether the findings made by the court are sufficient to uphold the judgment on that theory.

There is little conflict in the evidence, and therefrom it appears that one Edwin M. Newman, the plaintiff's predecessor in interest, owned ten acres of land located near the city of Billings. In the year 1899, by parol, he gave the trustees of school district No. 3, a rural school district, permission, without consideration, to erect a schoolhouse on a portion of his land and to utilize about one acre of the same for school purposes, which they did. At that time Newman was himself a member of the board of school trustees with whom he dealt. Later, in 1911, while Newman was yet a member of the board of school trustees, without any consideration or further agreement or understanding, the school trustees removed the old schoolhouse and erected a new school building on the original site, at a cost of approximatetly $2,700, which now stands there. It is a frame structure built upon a cement foundation. About the year 1917, school district No. 3 was absorbed and taken in as a part and portion of school district No. 2, comprising the city of Billings and considerable adjoining territory, and thereupon school district No. 3 ceased to exist. Since then the defendant has utilized the schoolhouse mentioned, and about two-fifths of an acre of inclosed land on a portion of which the schoolhouse is erected, for school purposes, school being there continuously conducted from the time the building was erected, except during the years 1921 to 1924, when it was found advantageous by the school trustees to close it up and make other provision for the school children in the vicinity. In January, 1924, it was ordered reopened by the board of school trustees, and school has since been therein conducted. During the time the school building was closed the desks, seats, and other furniture

were removed from their usual place in order to make use of the schoolroom for dancing.

On April 24, 1922, the plaintiff entered into a contract with one Edwin M. Newman for the purchase of the ten acres of land owned by the latter, including the tract in controversy, as to which the contract recites that the land is to be conveyed to the plaintiff, free of all encumbrances "except such rights, if any, as school district No. 3 of Yellowstone county may have to said premises, or any part thereof for school purposes."

After making such contract for the purchase of the entire ten-acre tract from Newman, the plaintiff, in the spring of 1922, built thereon a dwelling-house adjacent to the school-house and premises involved, and with his family moved into such dwelling and now occupies it as his home. He took possession of the entire ten-acre tract, and now asserts title to the same and is in possession thereof, save as prevented by the occupancy of the defendant of the tract in controversy. After moving upon the land he tore down the fence inclosing the schoolhouse and the outhouses connected therewith. School was not then being conducted in the school building, but it was used from time to time by people in the neighborhood for the holding of dances, over the plaintiff's objections and to the great annoyance of his family and himself. All state and county taxes upon the entire tract have at all times been paid by the plaintiff and his predecessor in interest. After the plaintiff and his family moved on to the land, the plaintiff notified the defendant in writing that its license to occupy the tract involved for school purposes was revoked, and requested that the school building be removed therefrom so soon as reasonably possible.

As findings of fact. Nos. 2, 3 and 4, the court found, in substance, that in the year 1900 the plaintiff's predecessor in interest, Edwin M. Newman, then being one of the

school trustees of school district No. 3, and the owner of the land in controversy, orally granted permission to the school trustees to occupy and use the tract involved for school purposes, such permission to continue so long as the district wished to utilize it for school purposes, and that in pursuance thereof the school district took immediate possession and erected a schoolhouse thereon; that thereafter, in the year 1911, the original school building being too small for the purposes of the district, it was removed, and a new building, substantial in construction, erected on the site of the old one; that thereupon the tract of land in controversy was by the school trustees inclosed by a substantial wooden fence, which remained in place until removed by the plaintiff in 1922; that at the time when the new school building was constructed Edwin M. Newman still continued to be the owner of the land, and one of the school trustees of the district, and offered no objection to its erection or to the expenditure of school funds for that purpose.

It was further found by the court that the defendant and its predecessor in interest had at all times since the construction of a wooden fence inclosing the tract in dispute, from the year 1911, been in open and uninterrupted adverse possession thereof against the plaintiff and his predecessor in interest; and that there is a specific reservation of the parcel of land involved under the instrument by which the plaintiff asserts title.

The record does not justify the findings made by the [1] court respecting the right of the defendant to the tract in question by adverse possession, and findings Nos. 2, 3 and 4, entirely negative such right. As the school district has continuously occupied the land under a parol license from the owner, it cannot be heard to assert title by adverse possession. A right to occupancy by virtue of a license precludes claim thereto by adverse possession. (*Great Falls Water Co.* v. *Great Northern Ry. Co.*, 21 Mont. 487, 54

Pac. 963; 2 C. J. 131.) However, since on this appeal counsel for the respondent school district has abandoned reliance upon adverse possession as basis for the judgment, we are relieved of the necessity of further consideration of the propriety of the court's findings in this respect. It is admitted by counsel that the judgment cannot be affirmed because of the court's findings of adverse possession, and from the record it appears to us that counsel has acted with wisdom in abandoning the defendant's claim of right to the property involved because of the court's finding in this respect, on which the judgment is in part predicated.

To sustain the judgment sole reliance is placed by the [2] defendant's counsel upon the proper application of the doctrine of equitable estoppel, and the findings of the court with respect thereto. The only findings made by the court on that principle are those embodied in Nos. 2, 3 and 4 above adverted to. In our opinion, from the evidence before it, the court could not have gone further than it did in making its findings of fact on that feature of the case, and the findings as made are not sufficient to warrant an estoppel of the plaintiff from asserting claim to the land involved.

The statute provides: "Whatever a party has, by his own declaration, act, or omission, intentionally and deliberately led another to believe a particular thing true, and to act upon such belief, he cannot, in any litigation arising out of such declaration, act, or omission, be permitted to falsify it." (Subd. 3, sec. 10605, Rev. Codes 1921.) This is the basic principle of the doctrine of equitable estoppel or estoppel *in pais* as it is sometimes termed, crystallized into statute. In general, to constitute an equitable estoppel the following elements are requisite: (1) The party to be estopped must be possessed of knowledge of the true facts or conditions; (2) he must intend that his statements or conduct shall be acted upon, or must so act that the party asserting the estoppel had a right to believe he

so intended; (3) the other party must be ignorant as to
the true state of facts; and (4) must rely upon the repre-
sentations made or conduct of the party to be estopped. An
essential element to the creation of an equitable estoppel
is that the person asserting it must show affirmatively that
he was misled to his prejudice by reason of the representa-
tions or conduct of another, respecting material matters as
to which he had no personal knowledge or means of knowl-
edge, and that he acted in reliance thereon. It involves an
element of falsehood or fraud, both of which are abhorred by
the law, and is applied to protect a person from loss or
damage in consequence of reliance placed upon the repre-
sentations or inducements made by another by acts or words.
"It is elementary that before anyone can invoke the doc-
trine, he must show that he was misled to his prejudice
by the conduct of which he complains." (*Yellowstone County*
v. *First Trust & Sav. Bank,* 46 Mont. 439, 128 Pac. 596;
*Tatem* v. *Eglanol Min. Co.,* 45 Mont. 367, 127 Pac. 28; *National
Bank of Gallatin Valley* v. *Ingle,* 53 Mont. 414, 164 Pac. 535;
*Rate* v. *American Smelting & Refining Co.,* 56 Mont. 277, 184
Pac. 478; *Estate of Nix,* 66 Mont. 559, 213 Pac. 1089.)

Applying the language of the statute and these settled
[3] principles governing equitable estoppel, it is readily
to be seen that the findings of fact by the court do not
support the judgment on that theory. The findings as made
by the court on their face negative equitable estoppel, for
there is nothing therein to indicate that the school district,
in dealing with the plaintiff's predecessor in interest, was
misled to its prejudice, nor would the evidence justify any
such. The school district was clearly benefited by the trans-
action, and dealt with the land owner with full knowledge
on the part of its board of school trustees of all the facts
and conditions respecting the ownership of the land and its
license to use a part thereof for school purposes. The owner
made no misrepresentation, and fairly disclosed all of the true

facts.  He was not guilty of any intentional act or omission, in the granting of the license to the board of school trustees, inducing them to construct a school building on his land. Nothing was done by him, either intentionally or deliberately, which can be said in any manner to have misled the school trustees to the prejudice of the rights of the school district. There was no false representation or concealment of material or other facts by the land owner.  A duty rested upon the school trustees in dealing with the land owner to ascertain the true condition of the title to the land before erecting the school building thereon, and not only were they in possession of equal knowledge with the land owner as to the record title, but it appears that in giving the license to occupy the tract of land the owner truthfully made statement to them that he was the owner of the ground, and gave his permission to them to utilize a portion thereof for school purposes, which offer was by the school board accepted with full knowledge of the condition of the title and the terms of the license under which the school district was permitted to occupy the parcel of land in controversy.

"A license is defined as a personal, revocable and unassignable privilege conferred either by writing or parol to do one or more acts on land without possessing any interest therein.  It is a distinguishing characteristic of a license that it gives no interest in the land and that it may rest in parol.  It is clear, of course, that this must necessarily be so, for if by a license an interest in the land could be created within the meaning of the statute of frauds, under that statute it could not be created by parol, and if created by grant and an interest in the land thereby passes, the distinctive feature of the transaction as a license is only an authority to do an act or series of acts on the land of another, and passes no estate or interest therein.  *  *  * It is an authority to do a lawful act, which, without it, would be unlawful, and while it remains unrevoked is a justifica-

tion for the acts which it authorizes to be done." (17
R. C. L., sec. 78, p. 564.)

"Inasmuch as it is an element of a license that it is per-
sonal, as such, it is incapable of being assigned or trans-
ferred by the person to whom it is granted.   *   *   *   More-
over, a license cannot operate as an estoppel against the
licensor in favor of a grantee of the licensee, because an
estoppel must be mutual. Nor is the grantee of a licensor
estopped to perform acts constituting a revocation of a mere
license, recoverable at pleasure, since, as against a licensee,
a grantee of the licensor has the same right to revoke a
license (assuming it was not revoked by the conveyance) as
has the original licensor." (17 R. C. L. sec. 88, p. 575.)

"It is an ancient and well-settled doctrine of the common
law that a mere license, whether by deed or by parol, is
revocable at pleasure, unless coupled with an interest, or
grant, or unless it is executed, or, according to the rule in
many jurisdictions, unless, by reason of expenditures made
by the licensee on the strength of the license, it would other-
wise be inequitable to permit the licensor to effect a revoca-
tion." (17 R. C. L., sec. 89, p. 576.)

The license given constituted an exclusive personal privi-
lege, extending only to school district No. 3 as an entity,
and was founded upon the trust and confidence of the land
owner in that particular district knowing its necessities and
advantages. The abandonment of that school district of
itself effectually terminated it. No rights were in any man-
ner conferred on the defendant, and, being revocable at any
time and not subject to assignment, it is plain that the de-
fendant cannot establish any claim thereunder. Under the
facts, the plaintiff had a legal right to terminate the license
under which the school district occupied the premises as he
did.

The judgment is reversed and the cause remanded to the
district court of Yellowstone county, with directions to enter

¡judgment in favor of the plaintiff in accordance with the prayer of the complaint.

*Reversed and remanded.*

ASSOCIATE JUSTICES HOLLOWAY, STARK and MATTHEWS concur.

MR. CHIEF JUSTICE CALLAWAY, being absent on account of illness, and not having heard the argument, takes no part in the foregoing decision.