METCALF, RESPONDENT, *v.* BARNARD-CURTISS CO., APPELLANT

No. 8704

Submitted February 24, 1947. Decided April 15, 1947.

180 Pac. (2d) 263

Mr. Ralph J. Anderson and Mr. Albert C. Angstman, both of Helena, and Mr. W. T. Boone, of Missoula, for appellant. Mr. Anderson and Mr. Angstman argued the cause orally.

Mr. Harlow Pease, of Butte, for respondent. Mr. Pease argued the cause orally.

MR. JUSTICE CHOATE delivered the opinion of the court.

The parties to this action will be hereinafter designated either by name or as plaintiff and defendant.

Defendant appeals from a judgment awarded plaintiff in the district court of Granite county, Montana, in the amount of $3,686.23 in an action brought against the defendant, a construction company, to recover a balance due for work allegedly performed by plaintiff under a contract, for clearing the timber and brush from a reservoir site and grubbing stumps from a part of said land.

Plaintiff first brought action in the district court of Granite county to recover a total of $4,022.10. That action involved the same clearing and grubbing for which recovery is sought herein, together with other claims not involved in the present suit. Plaintiff's first action was removed by defendant to the United States district court at Missoula. While this earlier suit was pending in the district court, one Ernest Maehl filed an action against defendant in the district court of Granite county in which he sought to recover for substantially the same clearing and grubbing of land for which plaintiff was seeking recovery in his action. Maehl's action was likewise removed by defendant to the United States district court at Missoula. Thereafter, Metcalf dismissed his action which had been removed to the United States district court, and instituted two separate actions, one of which is immaterial to this appeal and the other of which (case No. 2146 of the district court of Granite county) is the action now before this court.

Maehl's suit, which had been removed to the United States district court at Missoula, was tried in that court and resulted in a judgment in favor of Maehl in the amount of $3,368.91 for the clearing of brush and timber and other claims involved therein. Defendant appealed to the United States circuit court of appeals where the judgment was affirmed (Barnard-Curtiss Co. v. Maehl, 9 Cir., 117 F. (2d) 7) and was subsequently paid by defendant. All the area upon which Metcalf seeks recovery in this action for clearing and grubbing timber is embraced within the area on which Maehl brought suit and recovered judgment as above stated.

Defendant assigns error on several grounds, the chief of which

is the contention that plaintiff testified at the trial of the Maehl case that he and Maehl were partners in the doing of the work for which plaintiff now seeks to recover on his own account and that therefore plaintiff is estopped from now denying the existence of such partnership and that since recovery has been had by one of two partners, the present action to recover by the other partner cannot be maintained. We will therefore examine plaintiff's testimony in the Maehl case and in the case at bar.

Plaintiff's testimony in case at bar. Metcalf testified that in the early fall of the year 1936 he had a conversation with James A. Barnard. The latter wanted to know ''what I thought it was worth to clear'' the timber on a job upon which defendant was considering submitting a bid to the water conservation board. ''I told him I thought it was worth $100 an acre to clear it and that I would contract it at that.'' Around the first of September (1936), Metcalf had another conversation with James Barnard. The latter said ''they had gotten the bid and wanted to know if I wanted to contract it. I said 'yes, I would like to contract it for about 100 acres.' He said, 'All right, can I depend on you?' and I said, 'Yes, you can.' '' On the 6th of October (1936), witness had another conversation with Bob and James Barnard. They wanted to know when witness could get started. Metcalf said he could get started ''tomorrow morning'' on condition that he could use certain extra men and tools belonging to defendant. Right at that time the Barnard brothers told him, ''You have the contract, Mr. Metcalf.'' At that time also, the defendant agreed to carry Metcalf on its payroll at ''six bits an hour'' and also to take care of Metcalf's payroll, these items to be charged back to his account. They also volunteered to keep the books. Plaintiff went to work the next day with a crew of men, cutting and burning timber and finished the contract on the 18th of January (1937). During the cutting and burning operation Metcalf had a conversation with Bob Barnard about doing some grubbing to make a borrow pit. This was within the area that had been assigned to Metcalf to clear. Metcalf agreed to do this grubbing and Bob Barnard said ''Certainly, we will

make that all right with you.'' This grubbing was done in the month of November in the midst of the clearing operation. It is stipulated in this action that the area which plaintiff grubbed for the borrow pit was nine and one-half acres and that the total area which Metcalf was to clear was 99.88 acres. No agreement was had as to payment for the grubbing except that defendant would ''make that all right.'' Witness testified that he had an agreement for the clearing and burning at $100 an acre, and a verbal agreement to pay the reasonable value of the grubbing operation which covered nine and one-half acres. Metcalf alleged in his complaint that the reasonable value of clearing, burning and grubbing the timber upon the nine and one-half acres was $1,425, which would amount to $150 per acre. On the witness stand Metcalf testified to a valuation of $225 per acre for said work·but no attempt was made to amend the complaint to recover more than the $150 an acre, aggregating $1,425 for said work.

On cross-examination Metcalf testified that in the year 1935 a conversation had been had between Jim Barnard, Maehl and himself. This was before defendant had made a bid on the dam project. In this conversation Barnard asked Metcalf and Maehl if they would go up and look at the timber on the reservoir site and said he would like an estimate as to what it was worth to cut it. On the following Sunday, Metcalf, Maehl and Bob Barnard went up and looked at the timber. Witness testified that ''we,'' referring to himself and Maehl, told Barnard they thought it could be done for $100 an acre and that ''he and Maehl would be willing to take a contract at $100 an acre.'' Defendant did not get the contract for the dam project from the state water conservation board that year. Accordingly the letting was readvertised the following year of 1936. Prior to the letting in 1936, witness testified that Barnard again came to him and wanted to know if he could do that work for $100 an acre and that witness said ''Yes, I thought so.'' That conversation was probably in September. Metcalf testified it was then agreed that if the contract was let to the Barnard-Curtiss Com-

pany by the water conservation board, a contract in regard to the clearing would be given to him at $100 an acre. It will be observed from the foregoing testimony that at the trial of the case at bar, plaintiff expressly and consistently testified that the contract both for the cutting and burning and for grubbing a borrow pit was made by defendant company with him in 1936 and that Maehl was not a party to that contract.

Testimony in the Maehl case. Plaintiff's testimony on the trial of the Maehl case in the United States district court is before us, having been introduced as defendant's exhibit C in the present action. Plaintiff was called as a witness for the defendant and the court permitted counsel to treat him as an hostile witness whose interests were adverse to those of both parties to the Maehl case. His testimony in that case was as follows: Some time in 1935 Metcalf, in company with Bob Barnard and Jim Barnard and Maehl, went up to the Flint Creek dam site (upon which defendant was considering making a bid for the construction of a dam) to look at the timber, figuring on an estimate of what "we" could cut it for under a contract. At that time Jim Barnard talked with Metcalf and Maehl about cutting the timber and wanted to know how much "we" could cut the timber for. By "we" Barnard had reference to "Mr. Maehl and I." This conversation was directed to both Metcalf and Maehl. In this conversation Metcalf and Maehl agreed that "we could cut it for $100 an acre" and agreed "to take the contract for that clearing at that price."

There were several conversations thereafter between Maehl and Metcalf "about when the job was going to be let and of trying to get a contract on it." The first of those conversations was in 1935 when they were advertising for the job. Later conversations were had at various times including both the first time and the second time when they were advertising the job. In response to questions by the court Metcalf testified as follows:

"The Court: * * * Well how about it Mr. Metcalf, were you claiming for cutting the same timber that Mr. Maehl is claiming? The Witness: Yes.

The Court: The same identical land or part of it? The Witness: Most of it yes.

The Court: Most of it is the same? The Witness: Yes.

The Court: What, if any effect, has that upon your mind, with reference to Maehl's claim? The Witness: Nothing only just as I say it.

The Court: Well were you and he operating together at that time? The Witness: I contend that I done all the operating, I done all the work; we had an agreement whereby we would do this work together, and I done all the work.

The Court: In other words, your contention is that the agreement was between the defendant Barnard-Curtiss Company and you and Maehl? The Witness: Originally, yes.

The Court: When was that contract made? The Witness: Oh some time in 1936, the fall of 1936.

The Court: And your contention is that you did all the work? The Witness: Yes sir.

The Court: And now he wants half of the money? The Witness: That's it exactly.

The Court: And your interest is adverse to his then? The Witness: He didn't live up to his agreement with me.''

Witness was further asked the question, ''And subsequently did you and Mr. Maehl, operating together, make any verbal agreement as between the two of you, that you would have these clearing contracts together? A. Under certain conditions, yes.''

In the trial of the case at bar Metcalf was cross-examined concerning the above questions put to him in the federal court and was asked to say what he meant by his answers. When asked, ''Do you want to stand by these answers or do you want to deny them?'' witness said ''I want to deny them.'' On said cross-examination, witness declared that ''he was mixed up with two lawyers and a judge'' and that when he was testifying about a contract between Barnard-Curtiss Company and himself and Maehl in the fall of 1936 he was actually referring to the year 1935, and that ''We had an agreement in 1935, yes.''

The controlling question of fact presented on this appeal is

whether Metcalf did or did not testify in the Maehl case that he and Maehl were partners in the doing of the work for which Maehl recovered in the federal court and for which Metcalf has been awarded judgment in the case at bar. If Metcalf did deliberately and intentionally testify on the trial of the Maehl case that he and Maehl were partners in the doing of said work, then we think he was estopped to repudiate that testimony in the case at bar. If, on the other hand, Metcalf's testimony in the federal court relative to the existence of a partnership between plaintiff and Maehl was given inconsiderately and mistakenly, it cannot be made the basis of the equitable estoppel invoked by defendant. The law in that respect is stated in 31 C. J. S., Estoppel, sec. 122, page 392, as follows: "Under the doctrine of judicial estoppel as applied in at least one jurisdiction, on grounds of public policy, a party or a witness who states facts under oath, whether in a deposition or during the course of the trial, is estopped to deny such facts in a subsequent suit to which he is a party, although the parties to the second suit may not be the same; but such statements will not estop the party from proving the truth, if he can show that they were made inconsiderately, by mistake, or without full knowledge of the facts." Citing, Schultz, Baujan & Co. v. Bell, 23 Tenn. App. 258, 130 S. W. (2d) 149; 21 C. J., sec. 242, page 1237, note 53; 31 C. J. S., Estoppel, sec. 122, page 392, note 6.

First, as to the "contract" or "agreement" between the defendant and Maehl and Metcalf or either or both of them in the year 1935 : In our opinion the record in this case does not show that either or both Metcalf and Maehl entered into any contract with the defendant in the year 1935 for the doing of the work involved in this action. All that happened in 1935 with respect to any contract between the parties to this action was the following : In that year and before the Barnard-Curtiss Company had entered a bid on the dam construction project and before they had been awarded a contract for that job, Jim and Bob Barnard in company with Metcalf and Maehl, drove up to the dam site to look at the timber on it and get an estimate of

what it was worth to clear it. At that time Metcalf and Maehl told the Barnards that they would be willing to take a contract to do the job for $100 per acre. That is the testimony of Metcalf, J. A. Barnard and R. W. Barnard. All agree that no contract or agreement was reached between defendant and either or both Maehl and Metcalf in the year 1935, there being only a tentative offer at that time to do the clearing job at $100 an acre. In fact it would have been most unusual for an experienced contractor to sublet any part of a contracting job before he himself had made a bid and been given a contract for the work. It was not until midsummer of 1936 that the water conservation board re-let the contract to the defendant. The above facts disclose no "contract" or "agreement" to do the work at any price. They merely indicate a tentative offer to do the clearing job for $100 an acre. That offer was not accepted and could not have been accepted until the following year, 1936, when defendant was awarded a contract for the dam site project. We think that the rule of equitable estoppel relied upon by defendant should not be applied in this case except on a clear showing that Metcalf gave his testimony deliberately and intentionally and not mistakenly or inadvertently. As we have already pointed out, no "contract" with anybody was made in 1935. However, laymen do not always use language with full knowledge or appreciation of its legal implications. All the parties to the case at bar are agreed that tentative negotiations about a clearing contract were had in 1935 and Metcalf may very conceivably have called these negotiations a "contract" and have referred to them as a contract in his testimony in the Maehl case. Also there are some parts of Metcalf's testimony in the Maehl case which indicate that he was talking about the 1935 negotiations when he said "1936." Thus, when the judge asked him whether "the agreement was between Barnard-Curtiss Company and you and Maehl," he replied, "Originally, yes." This use of the word "originally" seems to indicate that witness was referring to the tentative proposal made in 1935 which he referred to as an "agreement," although in fact such negotiations never did ripen

into a completed contract. Again Metcalf was asked when on the stand in the Maehl case, "Subsequently did you and Mr. Maehl operating together make any verbal agerement as between the two of you that you would have this clearing contract together?" to which the witness answered, "Under certain conditions, yes." This was a qualified answer, not amounting to the assertion that the agreement was made in 1936 or what those conditions were. Granted that a different conclusion than that which we have reached is possible on the record before us, we are of the opinion that Metcalf's testimony does not show clearly that he deliberately and intentionally testified to the existence of a partnership agreement between himself and Metcalf in the fall of 1936 such as would estop him from his testimony in the case at bar to the effect that he alone and not he and Maehl made the clearing contract with defendant in the fall of 1936. Moreover, the conflict in the testimony on that question was resolved by the jury in plaintiff's favor and we do not feel warranted in disturbing the jury's findings.

It is well established that equitable estoppel cannot be invoked except upon a showing that the person asserting it was misled to his prejudice by the conduct of which he complains. Waddell v. School District No. 2 of Yellowstone County, 74 Mont. 91, 238 Pac. 884, and cases cited. In Mundt v. Mallon, 106 Mont. 242, 249, 76 Pac. (2d) 326, this court enumerated the six essential elements necessary to constitute an equitable estoppel. Two of them are, first, a change of position for the worse, which is the same rule as above stated in Waddell v. School District, and second, the truth concerning the facts must be unknown to the other party claiming the benefit of the equitable estoppel at the time when it was acted upon by him. The record shows that at the very moment when Metcalf was giving his testimony in the Maehl case upon which defendant relies for an estoppel, his suit in the state court was pending in which he had set up that the clearing contract in question was entered into between himself and defendant. Also while on the stand in the Maehl case, Metcalf testified that he had sued Barnard-Curtiss

Company on his contract and that he now claimed it was his contract and not Maehl's. In this state of the record we do not think it can be fairly said that defendant was misled to his prejudice or that defendant was ignorant of the facts as a result of Metcalf's testimony in the Maehl case.

Recovery from partners. The conclusion we have reached relative to the defendant's plea of estoppel disposes of his contention relative to the effect of recovery on the same cause of action by individual partners. We do not find that the record clearly discloses the existence of such a partnership.

Sufficiency of evidence. We find no merit in defendant's contention that the evidence is insufficient to justify the verdict. Without question the testimony in this case is very much in conflict but we cannot say that there is no substantial evidence to support the findings and verdict of the jury. If Metcalf's testimony is believed, it supports the verdict in his favor. This court has repeatedly announced the rule that in such cases it will not disturb the findings of the jury. Brown Bros. Lumber Co. v. Mitchell, 95 Mont. 408, 26 Pac. (2d) 969; Cash v. Knapp, 112 Mont. 101, 113 Pac. (2d) 343; Butler v. Paradise Valley Irrigation District, Mont., 160 Pac. (2d) 481, 483.

Instruction No. 10, which whether right or wrong constitutes the law of this case (Ingman v. Hewitt, 107 Mont. 267, 86 Pac. (2d) 653, and cases cited), told the jury that unless the parties to a contract agree upon all its terms the general and prevailing usage and custom with reference to like contracts, determines the rights and obligations of the parties. Defendant contends that the record shows that no agreement was made between the parties herein as to who should pay such items as compensation insurance, social security, taxes, office expenses and cost of supervision, and therefore Metcalf was liable for them. J. A. Barnard testified that under the general custom and practice of dealing between contractors and subcontractors in the absence of an express contract, "any items" are chargeable to the subcontractor. Asked to name them, witness said they

included labor, compensation insurance, social security, taxes, office expense and supervision. ''Don't know that I could name them offhand—any expense.'' Assuming that there was no express or implied agreement on Metcalf's part that he would pay these items, some $10,357.29, with which defendant seeks to charge him, that fact would not require a reversal of the judgment in this action. There is evidence in the record from defendant's pleading and from the testimony of James Barnard from which the jury might well have concluded that after allowing everything included in defendant's Exhibit G, including the labor and other expenses, under the hidden obligation imposed on plaintiff by ''usage and custom,'' defendant still owed plaintiff about $3,000. We have reference to the allegation in defendant's first affirmative defense that ''after charging the said partnership with moneys advanced for labor and other expenses and after deducting the amount of such charges from the total amount earned for said clearing and grubbing (defendant) became and was indebted to the said partnership for the sum of approximately $3,000.'' The force of this admission was in no way affected by the fact that defendant's pleading referred to an indebtedness to the ''partnership,'' since it is held that no partnership between Metcalf and Maehl actually existed and the 98.56 acres referred to was the acreage on which the work was done by Metcalf. That this admission in its answer was not a mere inadvertence on the part of the pleader appears also from James Barnard's testimony that the statement that approximately $3,000 was owed to the partnership ''may be true'' or ''Could be true.''

While, as we have indicated, Instruction No. 10 established the law of this case, we do not wish to be understood as approving it as a complete and accurate statement of the law on the subject of which it treats. The rule as to the applicability of business customs and usage to determine the rights and obligations of parties to a contract in the absence of express or implied agreement is subject to certain limitations. Such custom and usage must be shown to have been known by the party to be

affected by them (25 C. J. S., Customs and Usages, sec. 9, page 82); they must have been peaceably acquiesced in without dispute (25 C. J. S., Customs and Usages, sec 12, page 92) and they must have been reasonable and not calculated to throw disproportionate burdens on either party (25 C. J. S. sec. 12, page 92).

Variance. In his complaint, plaintiff sought judgment for $2,990, made up of the following items:

Cutting and burning timber, 98.56 acres, at $100 an acre, $9,856, less $8,291 paid, $1,565;

Clearing and burning and grubbing the timber upon nine and one-half acres of land, $1,425, which would be $150 an acre.

The sum of these two items is $2,990, the amount sued for by Metcalf.

In the case at bar Metcalf testified, over objection, that the reasonable value of the clearing, burning and grubbing the nine and one-half acres was actually $225 an acre. Defendant assigns this as a material variance between the allegations and the proof. Section 9183, Revised Codes, reads as follows: "No variance between the allegation in a pleading and the proof is to be deemed material, unless it has actually misled the adverse party to his prejudice in maintaining his action or defense upon the merits. Whenever it appears that a party has been so misled, the court may order the pleadings to be amended, upon such terms as may be just."

This court has repeatedly construed the above statute as applied to cases in which a material variation has been claimed and has held that an immaterial variation will not work a reversal. Stewart v. Stone & Webster Eng. Corp., 44 Mont. 160, 173, 119 Pac. 568; that mere divergencies in detail in the proof from the allegation of a pleading are immaterial. American Livestock & Loan Co. v. Great Northern Ry. Co., 48 Mont. 495, 502, 138 Pac. 1102; that a variance which does not mislead the defendant to his prejudice is insufficient to warrant the granting of a nonsuit. Wilcox v. Newman, 58 Mont. 54, 58, 190 Pac. 138; a party will not be heard to complain that he was misled to his prejudice by variance, unless he was surprised at

the trial by having to meet issues not pleaded. Frederick v. Hale, 42 Mont. 153, 161, 112 Pac. 70.

It is our conclusion that the variance between the allegations in the complaint that the grubbing job was worth $150 an acre and testimony that it was worth $225 an acre was an immaterial one and that it could not have misled the defendant to its prejudice in maintaining its defense on the merits.

Excessive damages. We find no merit in the contention that the damages awarded in this case were so excessive as to appear to have been given under the influence of passion or prejudice.

The judgment is affirmed.

Mr. Chief Justice Adair and Associate Justices Cheadle, Angstman and Metcalf concur.

Rehearing denied May 8, 1947.