IN RE ANDERSON'S ESTATE.

No. 8768.

Submitted January 26, 1948. Decided May 26, 1948.

194 Pac. (2d) 621.

516

Mr. John J. Greene, of Cut Bank, Mr. Louis P. Donovan, of Shelby, and Mr. Ralph J. Anderson and Mr. Albert C. Angstman, both of Helena, for appellants. Mr. Anderson and Mr. Angstman argued the cause orally.

Mr. John W. Bonner, of Helena, for Emelia Anderson, respondent. Mr. Bonner argued the cause orally.

Mr. Howard C. Burton and Mr. Edward C. Alexander, both of Great Falls, for Mr. H. C. Hall, respondent. Mr. Alexander argued the cause orally.

Mr. Lloyd A. Murrills, of Cut Bank, in pro. per.

MR. JUSTICE METCALF delivered the opinion of the court.

In November 1939 Emelia Fadden came to Montana to live with her daughter. She had been married to one Walter Fadden since June 18, 1929. Emelia and Walter Fadden lived together for two years in California and then separated and they had lived apart for eight years when Emelia Fadden came to Montana. In May 1940 Emelia met Peter B. Anderson, a widower, living at Cut Bank, Montana. He proposed marriage but she informed him that she was already married. In June 1940 Emelia acquiesced to Anderson's proposal and at his suggestion prepared to get a divorce. She had resided in Montana for less than the year required by the Montana statutes, Rev. Codes 1935, sec. 5766, and therefore could not institute an action for divorce in this state. It was arranged that Emelia would go to Las Vegas, Nevada, take up her residence there and procure a divorce and then marry Anderson. Anderson drove her to Butte so that she could take the train to Las Vegas, paid her fare and advanced money to pay her expenses while she stayed in Las Vegas. Emelia arrived in Las Vegas, Nevada, on July 12, 1940, where she took a furnished room. She remained there continuously until September 2, 1940. She filed an action for divorce and then returned to Butte where Anderson met her and together they took a trip to Minnesota, visiting Mr. Anderson's relatives, and later returned to Browning, Montana. Then Anderson again drove her to Butte where she took the train to Las Vegas in order to procure her final decree of divorce. On November 13, 1940, she was granted a final decree of divorce from Walter Fadden.

Walter Fadden did not appear and service was had upon him by publication. The Nevada court found as a fact "that the plaintiff is now and was for more than six weeks immediately preceding the filing of her verified complaint in this action, an actual bona fide resident of Clark County, Nevada, and that during all of said time, Las Vegas, Clark County, Nevada, was the home and only home and sole place of residence of the plaintiff."

518

After a brief trip to Los Angeles, Emelia returned to Montana and she and Peter B. Anderson were married at Missoula, Montana, on February 3, 1941. They lived together as man and wife until September 2, 1943. On that date Peter B. Anderson instituted an action for divorce from Emelia Anderson and after hearing Peter B. Anderson was granted a divorce from Emelia Anderson by decree entered October 17, 1944. Thereafter an appeal from the judgment granting the decree of divorce was perfected by Emelia Anderson. On March 17, 1945, subsequent to the perfection of the appeal but before the hearing thereon, Peter B. Anderson died and his administrator was substituted as plaintiff.

The appeal was presented to this court as Cause No. 8578, Judson v. Anderson, 118 Mont. 106, 165 Pac. (2d) 198, and this court ordered the judgment vacated and the plaintiff Peter B. Anderson's complaint for divorce dismissed. This court retained jurisdiction after the death of Peter B. Anderson over the objections of Anderson's administrator that the only question was the marital status of the parties which abated on the death of one of them. This court said: "But property rights of the parties are also necessarily here involved, as such rights are lawful concomitants of the marriage status. It is true that no property rights were specifically adjudicated by the decree, but it is equally true in this case that apparently valuable property rights of the wife, including dower and succession rights, will be effectively taken away from the wife should the decree be permitted to stand or the appeal abated."

Thereafter on August 6, 1946, Peter B. Anderson, son of the deceased Peter B. Anderson, and Mildred Kittilson, daughter of the deceased, filed a petition for probate of the will of said deceased Peter B. Anderson. The will offered for probate was executed and attested on July 18, 1935.

Emelia Anderson objected to the probate of the will for the reason that she married Peter B. Anderson, deceased, after the execution of the will offered for probate and that by virtue of section 7001, Revised Codes of Montana 1935, this marriage

operated to revoke the will. The proponents of the will answered the objections by alleging that Emelia Anderson married Walter Fadden in California on June 18, 1929, that the marriage had never been legally dissolved and that the marriage of Emelia Anderson and Peter B. Anderson was void and therefore did not revoke the will.

In her reply Emelia Anderson alleged that she was lawfully divorced from Walter Fadden at Las Vegas, Nevada, on November 13, 1940, that she was lawfully married to Peter B. Anderson and consequently the will executed before their marriage was revoked.

After hearing evidence two questions were submitted to the jury for findings. The questions and the jury's findings thereon are:

"Finding No. 1. Question. Did the Objector, Emelia Anderson, when she went to the State of Nevada and at all times up to and including the time she filed her action for divorce against Walter E. Fadden intend to make the State of Nevada her permanent residence or her residence for an indefinite period of time? Answer. No.

"Finding No. 2. Question. Did the deceased, P. B. Anderson, prior to and during the time Emelia Anderson was taking steps to secure a divorce from Walter E. Fadden take part in and urge upon Emelia Anderson going to Nevada for the purpose of securing such divorce, including the payment of all, or a substantial part of the expenses of travel and the costs of the divorce action? Answer. Yes."

The court made additional findings of fact on noncontroversial matters and made the following conclusions of law:

"I. That proponents, Peter B. Anderson and Mildred Kittilson, as the heirs of and in privity with Peter B. Anderson, deceased, are barred and estopped from questioning the validity of the judgment and decree of the Nevada Court in the divorce action mentioned in said Finding No. 1 of the jury.

"II. That by reason of the said marriage of Peter B. Anderson subsequent to the date of the execution of said will

offered for probate said will was and is revoked as a matter of law.

"III. That the objections of Emelia Anderson and the objections of H. C. Hall to the probate of said will should be and they are sustained."

The court entered judgment denying probate of the will. The proponents have appealed from this judgment.

The trial court based its decision on the jury's finding No. 2 that Petèr B. Anderson, deceased, had taken, persuaded and induced Emelia Anderson to go to Nevada for the purpose of securing a divorce from Walter E. Fadden and had paid a substantial part of the expenses of travel and the costs of the divorce action incurred by Emelia Anderson, had supported her while she was living in Las Vegas and subsequently, with full knowledge of the circumstances, married her and they lived together as husband and wife for two and a half years.

The United States Supreme Court in the second case of Williams v. State of North Carolina, 325 U. S. 226, 65 S. Ct. 1092, 89 L. Ed. 1577, 157 A. L. R. 1366, reaffirmed the proposition that a bona fide domicile in the state granting the divorce was necessary to confer jurisdiction. It was there held that the full faith and credit clause of the Federal Constitution, article 4, section 1, did not prevent one state from refusing to recognize a divorce decree of another state where the plaintiff had not in fact acquired domicile. A recital in the decree that such domicile had been obtained was unavailing if the issue had not been actually litigated in an adversary proceeding.

The doctrine of estoppel has been invoked to prevent a collateral attack on a foreign judgment by the party procuring the divorce or where the defendant in the divorce action remarried in reliance thereon.

The Restatement of the Conflict of Laws, section 112, says:

"The validity of a divorce decree cannot be questioned in a proceeding concerning any right or other interest arising out of the marital relation, either by a spouse who has obtained such decree of divorce from a court which had no jurisdiction,

or by a spouse who takes advantage of such decree by remarrying."

The rule has been extended to apply to the spouse of the divorcee who was active in securing the divorce (17 Am. Jur., Divorce and Separation, sec. 760, Cum. Supp. 1947; Freeman, Judgments, sec. 320, note 3 A. L. R. 535, 540), or one who treated it as valid and changed his or her marital status in reliance thereon. The doctrine that a person instrumental in procuring a divorce was barred from attacking its validity has been variously founded upon quasi-estoppel (In re Davis' Estate, 38 Cal. App. (2d) 579, 101 Pac. (2d) 761, 102 Pac. (2d) 545; Harlan v. Harlan, 70 Cal. App. (2d) 657, 161 Pac. (2d) 490) on the equitable maxim that he who comes into equity must come with clean hands (Heller v. Heller, 172 Misc. 875, 15 N. Y. S. (2d) 469), and the related principle that equity will not relieve one party against another when both are in pari delicto. Bowen v. Finke, D. C., 34 F. Supp. 235; Margulies v. Margulies, 109 N. J. Eq. 391, 157 A. 676. And see Saul v. Saul, 74 App. D. C. 287, 122 F. (2d) 64, and Goodloe v. Hawk, 72 App. D. C. 287, 113 F. (2d) 753.

Not all states have accepted the doctrine as applied by the Restatement of the Conflict of Laws or as extended above. In some cases such as Starbuck v. Starbuck, 173 N. Y. 503, 66 N. E. 193, 93 Am. St. Rep. 631; In re Hensgen's Estate, Cal. App., 181 Pac. (2d) 69; In re Romanski's Estate, 354 Pa. 261, 47 A. (2d) 233, and Wampler v. Wampler, 25 Wash. (2d) 258, 170 Pac. (2d) 316, the courts have applied the estoppel doctrine only where property or pecuniary interests are involved, as distinguished from a determination of the marital status of the parties. The instant case might be decided on that basis. The marital status of the parties has not been an element in this case, nor was it an issue in the previous divorce action after Peter B. Anderson died, pending appeal. The sole problem since the death of Mr. Anderson has been the determination of the personal financial and property rights of the parties.

But the distinction in its application becomes hazy and obscure and is an unsatisfactory one.

Other states have insisted that inasmuch as both parties were cognizant of the essential facts, neither was misled. Therefore the doctrine of estoppel as we customarily regard it would not apply.

For example in Waddell v. School District, 74 Mont. 91, 97, 238 Pac. 884, 886, this court said: "An essential element to the creation of an equitable estoppel is that a person asserting it must show affirmatively that he was misled to his prejudice by reason of the representations or conduct of another, respecting material matters as to which he had no personal knowledge, or means of knowledge, and that he acted in reliance thereon." Recently this rule was reaffirmed in Metcalf v. Barnard-Curtiss Co., 180 Pac. (2d) 263, 268, when this court said: "* * * the truth concerning the facts must be unknown to the other party claiming the benefit of the equitable estoppel * * *."

Smith v. Smith, 72 Ohio App. 203, 50 N. E. (2d) 889; Wampler v. Wampler, supra, and Ainscow v. Alexander, Del. Super., 39 A. (2d) 54, are examples of cases wherein the courts, in part at least, based their refusal to bar the person procuring, or instrumental in procuring the foreign divorce, from attacking the validity of a divorce decree obtained in a jurisdiction where neither party established a bona fide domicile on the absence of the above essential elements of equitable estoppel.

But the estoppel applied here is not true estoppel in pais as analyzed in Waddell v. School District, supra, or Metcalf v. Barnard-Curtiss Co., supra, but is quasi-estoppel, or ratification or inconsistency of conduct. Whatever it is called, it is not based on the elements of misrepresentation of facts by one party followed by damage to the other. "But there are other forms of estoppel in which knowledge on the part of the person invoking the estoppel and reliance upon the fact and a change of situation based upon that reliance are not essential." 10 Cal. Jur. 645; In re Davis' Estate, supra; Poston v. Delfelder, 39 Wyo. 163,

270 Pac. 1068, 1071, 273 Pac. 176; Freeman on Judgments, Vol. 1, sec. 320, Vol. II, secs. 626 and 676; Kaufman v. Kaufman, 177 App. Div. 162, 163 N. Y. S. 566.

The decisions on this question are numerous and varied. They have been the subject of exhaustive annotation in 153 A. L. R. 941; 140 A. L. R. 922; 122 A. L. R. 1328; 109 A. L. R. 1026; 39 A. L. R. 677 and 3 A. L. R. 540. The question has also been extensively discussed by text writers and scholars in the law reviews. See the June 1935 issue of Law & Contemporary Problems, devoted exclusively to the problem of migratory divorce and especially Harper, The Myth of the Void Divorce, page 335; also Powell, And Repent at Leisure, 58 Harvard Law Review 930, and Jacobs, Attack on Divorce Decrees, 34 Michigan Law Review, 749 and 959.

Probably the chief reason for the differences of opinion in the application of the foregoing rules of estoppel is the policy of the state toward divorce. In states like North Carolina, or New York, the courts have followed strong public policy as laid down by the legislature against citizens of those states attempting to evade the domestic divorce laws by migrating to other states.

The state of Montana has declared through the legislature that it will recognize divorce on the grounds enumerated in section 5736, Revised Codes of 1935, as amended. The grounds for divorce in Montana are almost the same as those in Nevada. Hillyer Comp. Codes, Nevada, 1931-1941 Supp. sec. 9460.

No public policy of the state of Montana is violated by recognizing a Nevada divorce granted on the same grounds as the same divorce could have been granted in Montana.

Nor has there been an attempt at an evasion of the laws of this state similar to that taking place where a citizen of the state, domiciled therein, establishes a fictitious domicile in another state for the purpose of obtaining a divorce. See In re Blum's Estate, 185 Misc. 43, 55 N. Y. S. (2d) 651, 652. Emelia Anderson was married in California and she lived in that state with her husband. That was the last matrimonial domicile. She had lived in Montana but eight months prior to going to Nevada.

She had not established a residence in Montana for the requisite period of one year needed to entitle her to institute an action for divorce in the courts of this state.

On the other hand the marriage between Emelia Anderson and ▮ Peter Anderson took place in the state of Montana. The public interest of this state would be most concerned in validating the marriage relationship that was entered into in this jurisdiction. Welch v. All Persons, 78 Mont. 370, 254 Pac. 179; Shepherd & Pierson Co. v. Baker, 81 Mont. 185, 262 Pac. 887; 35 Am. Jur., Marriage, sec. 3.

But an equally compelling reason for refusing the proponents ▮ of the will the right to collaterally attack the divorce decree of the Nevada court is the decent regard and respect we owe to the judgments of the courts of sister states. Even though the full faith and credit clause of the Federal Constitution does not prohibit a collateral attack on the Nevada decree, the rules of comity prevent such an attack.

Since the decision of the Supreme Court of the United States in Bank of Augusta v. Earle, 13 Pet. 519, 10 L. Ed. 274, it has been recognized that the common law principles of comity between nations are equally applicable to relations between states. The court there said: ''The intimate union of these States, as members of the same great political family; the deep and vital interests which bind them so closely together, should lead us, in the absence of proof to the contrary, to presume a greater degree of comity, and friendship, and kindness towards one another, than we should be authorized to presume between foreign nations. And when (as without doubt must occasionally happen) the interest or policy of any State requires it to restrict the rule, it has but to declare its will, and the legal presumption is at once at an end.''

Unless the public policy of the state would prevent the ▮▮ recognition of the decree or such recognition would be injurious to the best interests of the state we must recognize the force and effect of the decrees of our sister states and enforce them in the same manner that they enforce the decrees

of courts of our state. We have concluded that there is no conflict with public policy to recognize this Nevada divorce. Gildersleeve v. Gildersleeve, 88 Conn. 689, 92 A. 684, 686, Ann. Cas. 1916B, 920.

It is the policy of this state to enforce the sanctity of a marriage relationship entered into in Montana, and it is our obligation to fix and determine the status of our citizens so that they will have the highest degree of certainty and stability possible. It is also our duty to give such faith and credit to foreign decrees as is consistent with the welfare of the state and public policy as enacted by our legislature. It is therefore our conclusion that the Nevada divorce decree was not subject to collateral attack.

For a comparable situation applying public policy as the test whether a judgment can be collaterally attacked for lack of jurisdiction over the subject matter, see Restatement Judgments, section 10, where the American Law Institute says: "Where a court has jurisdiction over the parties and determines that it has jurisdiction over the subject matter, the parties cannot collaterally attack the judgment on the ground that the court did not have jurisdiction over the subject matter, unless the policy underlying the doctrine of res judicata is outweighed by the policy against permitting the court to act beyond its jurisdiction." See also, Hamm v. Hamm, Tenn. App., 204 S. W. (2d) 113.

It is contended that even though Peter B. Anderson, deceased, were estopped to deny the validity of the Nevada divorce his heirs would not be so estopped. It was held in Hynes v. Title Guarantee & Trust Co., 273 N. Y. 612, 7 N. E. (2d) 719, that an executor was estopped; in Melchers v. Bertolido, 118 Misc. 196, 192 N. Y. S. 781, that a grantee would be estopped, and in Elliot v. Wohlfrom, 55 Cal. 384, that grantees in a deed executed by a husband who was estopped were themselves estopped. In Davis v. Davis, 38 Cal. App. (2d) 579, 101 Pac. (2d) 761, 764, 102 Pac. (2d) 545, the court recognized the general rule that an heir being in privity with the ancestor is

bound by an estoppel binding the ancestor. 19 Am. Jur., sec. 155, p. 811. There the court held that children of the first marriage were estopped to deny the validity of the second marriage.

A contrary case is In re Lindgren's Estate, 293 N. Y. 18, 55 N. E. (2d) 849, 153 A. L. R. 936 decided by a divided court. In a comment on the case in 93 Pa. Law Review 215, the majority decision is criticized and the author declares that it is difficult to find reasons for the ruling but the highly probable ground is that New York strongly opposes divorces granted by Florida on grounds not recognized in New York.

In holding above that the divorce decree of the Nevada court was not subject to collateral attack we have based our decision on more than estoppel. We have based it on the principles of comity and public policy. It follows, then, that not only would those in privity be prevented from attacking the foreign divorce but such a decree would be good against attack by strangers. In re Blum's Estate, supra.

The proponents have cited the general rule that estoppel to ▇ be available to the objectors must be specially pleaded. Krueger v. Morris, 110 Mont. 559, 107 Pac. (2d) 142; Pue v. Lewis and Clark County, 75 Mont. 207, 243 Pac. 573. Estoppel of a different sort was specially pleaded by Emelia Anderson. Pleading a different kind of estoppel does not permit the objector to prove the estoppel here relied upon. O'Meara v. McDermott, 40 Mont. 38, 57, 104 Pac. 1049.

But the rule that an estoppel must be specially pleaded is, like many other legal rules, subject to exceptions. One of the exceptions is that if a party had no opportunity to plead the estoppel, he may introduce evidence just as if the estoppel had been specially pleaded. Middle States Oil Corporation v. Tanner-Jones Drilling Co., 73 Mont. 180, 183, 235 Pac. 770; note in 120 A. L. R. 76.

A will contest is a special proceeding governed by statute. ▇ 1 Bancroft's Probate Practice 296. The statute, sec. 10032, Rev. Codes of Montana 1935, expressly sets forth the

pleadings allowed in a contest of a will. The contestant must file "written grounds in opposition to the probate." The petitioner may demur on any of the grounds provided by sections 9131-9136 and if the demurrer is overruled or he elects to waive his demurrer the petitioner may answer. The pleadings are then ended and the issue is joined. 26 Cal. Jur., Wills, sec. 352, p. 1097. There is no provision in the statute or in the practice for any further pleading. Barney v. Hayes, 11 Mont. 99, 107, 27 Pac. 384.

The question of the validity of the Nevada divorce of Emelia ▆▆▆ Anderson from Walter Fadden arose as follows: Emelia Anderson as objector filed her written opposition to the petition for probate of the will of Peter B. Anderson. Her grounds for objection were that she had married Peter B. Anderson after the execution of the will sought to be probated. The petitioner answered, alleging that at the time Emelia Anderson married Peter B. Anderson she was already married to Walter Fadden who was still living, and that her marriage to Walter Fadden had never been dissolved by a court of competent jurisdiction. Thus was the issue joined. No further pleadings were permissible under the terms of section 10032, Revised Codes of 1935. Therefore there was never a legal opportunity to plead the estoppel relied upon and under the exception above noted evidence of such an estoppel was properly admissible at the trial of the cause. See In re Estate of Davis, 38 Cal. App. (2d) 579, 586, 101 Pac. (2d) 761, 102 Pac. (2d) 545, where the same question was raised and similarly disposed of in a proceeding to determine heirship.

The trial court properly denied probate of the will of Peter B. Anderson. The judgment is affirmed.

Mr. Chief Justice Adair and Associate Justices Choate, Gibson and Angstman, concur.

Rehearing denied July 1, 1948.