MR. JUSTICE SHEEHY,
dissenting:
I dissent.
The majority opinion proceeds on two premises: that the Shepherds’ fraud claim against Aetna is precluded by collateral estoppel by reason of the South Dakota decision; and alternatively, that Shepherds’ agent had actual notice of the fraudulent scheme and therefore Shepherds had imputed notice of the scheme.
We should not extend full faith and credit to the South Dakota decision in this case for two reasons: 1) South Dakota’s opinion as to the operation of a release is against the public policy of this state; and 2) it is not clear from the South Dakota decision that the precise issue of fraud raised by the Shepherds was considered by the South Dakota court.
South Dakota denied the Shepherds’ claim of fraud against Aetna on two grounds, that their agent had notice of the fraudulent act, and that the release given by the Shepherds to McElvains operated to relieve Aetna of any fraudulent claim from the Shepherds. As to the second ground, at least equal weight was given by South Dakota to its determination that the release and satisfaction by the Shepherds operated to merge Shepherds’ mortgage lien in the title and thereby precluded any claim of the Shepherds against Aetna on the grounds of fraud.
However, the release given by the Shepherds to the McElvains in *150 return for a quitclaim deed on the South Dakota land expressly released only the McElvains and expressly provided that “[n]o other persons, firms, or entities other than those expressly mentioned above are in any way released by this document.”
It has been the law in this state since Black v. Martin (1930), 88 Mont. 256, 292 P. 577, that a plaintiff may release a joint tortfeasor and still preserve a cause of action against another joint tortfeasor if there is language to that effect in the written release. See also McCloskey v. Porter (1973), 161 Mont. 307, 506 P.2d 845.
When the law enunciated by a court of a sister state is against the public policy of the forum state, the decision of the court of the sister state is not entitled to full faith and credit. In In Re Anderson’s Estate (1948), 121 Mont. 515, 524, 194 P.2d 621, 626, we stated:
“Unless the public policy of the state would prevent the recognition of the decree or such recognition would be injurious to the best interests of the state we must recognize the force and effect of the decrees of our sister states . . .” (Emphasis added.)
Further, contrary to what is said in the majority opinion, it cannot be determined from the South Dakota opinion what was Shepherds’ precise claim of fraud against Aetna. There is no mention in the South Dakota opinion that Aetna’s agent, McElvain, forged a buy-sell agreement to show a sales price of $2,185,000 instead of the true agreement of $1,385,000. Knowledge of the true nature of McElvain’s fraud is necessary to determine whether the knowledge acquired by Ranch Mart and imputed to the Shepherds by both the South Dakota Court and this Court constitutes notice that fraud was afoot. Both South Dakota and this Court decide that point against the Shepherds by a selective reading of the testimony of Mading, the Ranch Mart agent. The full pertinent testimony of Mading follows:
“A. I wasn’t that aware of the amounts, Mr. Huntley. If McElvain was borrowing a million five hundred thousand dollars, it wasn’t readily obvious to me as to what he was going to do with it. He was in the process of improving the land, and also had properties of his own, and I did not know how that tied in with a million five hundred thousand dollars.
“Q. I am sure that is the case, but is it your testimony that you did not know that Aetna Life Insurance Company was going to be in a first mortgage position on this property with a mortgage in excess of a million and a half dollars? A. State your question one more time.
*151 “Q. Okay. Maybe it would be just as handy if I read it back. I think . . . (Last question repeated by reporter.) A. That is not my testimony. I am sure that I was aware that Aetna Life Insurance Company was going to be in a million and a half dollar mortgage position, but I did not know what all on [sic] is what I am telling you.
“Q. Okay. A. (Continuing.) I knew that this property was certainly a part of it.
“Q. You did know then that they were going to have a mortgage in excess of a million and a half dollars, and that their mortgage would be superior to the second mortgage of the Shepherds? A. Yes, I am sure that I would have, I would have been aware of it just the way you said it.
“Q. And when were you aware of that? A. I don’t know that I was blatantly aware of it at any time, Mr. Huntley. It wasn’t a glaring thing in that the McElvains, we knew were in a position of improving the property, and, you know, we did not know even to what extent they had improved it by the time that we closed the agreement. We also knew that the money to be advanced on it was evidently being advanced in different stages, or at least we had been told that.
“Q. Well, did you ever tell the Shepherds, or either one of them, that the Aetna position was going to be first mortgage of in excess of a million and a half dollars? A. No, sir.
“Q. Would you explain why you did not tell them that? A. It was not our business to tell them that, in that we did not know what all the funds were being used for.” (Emphasis added.)
The full testimony of Mading puts a quite different light on his knowledge of the amount of the mortgage, and the reasons why he did not convey the information to the Shepherds.
While I accede that the recorded documents constituted constructive notice to the Shepherds of the contents of the mortgages, yet the circumstances of the recording in this case led to the ability of McElvain to deceive the Shepherds. The mortgages were recorded in three different states, in three different amounts in such manner that if the Shepherds went to the three different courthouses, they could determine the total amount but not otherwise. The Fallon County mortgage was for $664,000; the Harding County, South Dakota mortgage was for $751,000 and the Bowman County, North Dakota mortgage was for $140,000. This circumstance of separate recording of the instruments has made it possible for Aetna’s agent, McElvain, to hide the true total amount of the mortgages against the Shepherds’ property.
*152 Under these circumstances, I would agree with the District Court and hold that the Shepherds lien was entitled to preference ahead of Aetna on the Montana property and affirm the District Court.
MR. JUSTICE HUNT and MR. JUSTICE MORRISON join in the dissent of MR. JUSTICE SHEEHY.